In re MID–ATLANTIC TOYOTA
ANTITRUST LITIGATION.

Daniel E. GOLUB, et al.

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

Wallace H. JOHNSTON, Jr., et al.

v.

MID–ATLANTIC TOYOTA DISTRIBU-
TORS, INC., et al.

No. MDL–456.
Civ. Nos. Y–81–806, Y–81–2954.

United States District Court,
D. Maryland.

Feb. 2, 1982.

Michael F. Brockmeyer, Asst. Atty. Gen. of Maryland, Baltimore, Md., liaison counsel, Paul H. Titus, Bernard D. Marcus, Linda H. Jones, Pittsburgh, Pa., C. Jacob Ladenheim, and Susan M. Jenkins, Fincastle, Va., for plaintiffs.

Raymond W. Bergan, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

These two cases, along with six *parens patriae* cases, are consolidated in this Court for pretrial purposes after a transfer by the panel on Multi-District Litigation pursuant to 28 U.S.C. § 1407. Both complaints allege violations of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and § 3 of the Clayton Act, 15 U.S.C. § 14, and seek treble damages pursuant to 15 U.S.C. § 15. The causes of action are identical to those asserted in the state cases brought pursuant to 15 U.S.C. § 15c in the states of residence of the plaintiffs.[1] The plaintiffs charge that defendants conspired to fix prices of a protective package applied to new Toyotas and that the purchase of the Toyotas was conditioned on the purchase of the protective package.

Plaintiffs seek certification of a class action under Rule 23(b)(3), F.R.Civ.P.[2] In

---

1. Each of the individual cases was filed in its respective state, *Golub* in Pennsylvania, and *Johnston* in Virginia, before the state filed its *parens* case. In Virginia, there was a class case filed by defendant Johnston prior to the instant *Johnston* case. That case has been dismissed, and all the pertinent parties from *Johnston I* are involved in the instant action. Both Pennsylvania and Virginia have asserted claims for tying under 15 U.S.C. § 14, which distinguishes those *parens* actions from the suits of Delaware, Maryland, West Virginia and the District of Columbia.

2. Rule 23 provides in pertinent part:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only

*Golub*, there are two plaintiffs, one individual and one corporation. In *Johnston*, filed on behalf of three plaintiffs, only the individual Wallace H. Johnston, Jr. remains. The individual plaintiffs have indicated that if the class is certified, they will opt out of their respective *parens* actions pursuant to 15 U.S.C. § 15c(b)(2). The class represented by each case would then consist of any purchasers of Toyotas during the relevant period who are not represented by any *parens* action. Such a class would include individuals who opt out of their state's *parens* action, or any purchasers who are not natural persons and hence not covered by the *parens* statute.

■ The proponents of class certification have the burden of establishing the right to certification. *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). Plaintiffs must first comply with all of the requirements of Rule 23(a) as a prerequisite to their right to certification under Rule 23(b). *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 448 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699 (4th Cir. 1976). Rule 23(a) requires (1) that the class be so numerous that joinder of all members is impracticable; (2) that common questions of law or fact exist; (3) that the claims of the class representatives be typical of those of the class; and (4) that the class representatives adequately represent the class.

There is no serious contention that plaintiffs do not meet the first two requirements. Defendants challenge typicality obliquely in their argument on the predominance of common questions and the manageability of the class under Rule 23(b)(3). The crucial issue upon which class certification turns is the fourth requirement, whether the named plaintiffs will adequately represent the class.

■ The requirement that the representative parties fairly and adequately protect the interests of the class is mandated by the provision in Rule 23(c)(3) that the judgment is binding on all class members who receive notice and do not request exclusion. Since the class members are to be bound, due process requires that the courts insure that representation is adequate. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968) (Eisen II).

Generally courts have found that the adequacy of representation requirement means:

> that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit.

*Bogosian v. Gulf Oil Co., supra*, 561 F.2d at 449. Defendants assert that the fee and cost arrangement between the plaintiffs and their respective attorneys is unethical,[3]

---

> if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

3. Specifically, defendants claim the agreement violates ABA, Model Code of Professional Responsibility DR5–103(B), which provides:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, *provided the client re-*

thus rendering the *Golub* and *Johnston* plaintiffs inadequate representatives. Defendants ask the Court to deny class certification on this ground.

Several courts have discussed the propriety of class certification in the face of ethical violations. Some have refused to certify on that ground. *E.g., Carlisle v. L.T.V. Electrosystems, Inc.,* 54 F.R.D. 237 (N.D.Tex. 1972); *Taub v. Glickman,* 14 Fed.R.Serv.2d 847 (S.D.N.Y.1970). Others have said there must be egregious misconduct to refuse certification. *E.g., Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927 (7th Cir. 1972). No court faced with an alleged violation of DR 5–103(B) has had to deny certification on that basis. Most of those courts have indicated, however, that if faced with a violation similar to the one in the case at bar, they would decline to certify.

In *Stavrides v. Mellon National Bank & Trust Company,* 60 F.R.D. 634, 637 (W.D. Pa.1973), the court allowed defendants to inquire into the professional conduct of plaintiffs' counsel "to discover disabling breaches of the Code of Professional Responsibility which would prevent plaintiffs' counsel from 'vigorously and forthrightly taking up the cause of the class they seek to represent,'" quoting *Taub v. Glickman, supra,* 14 Fed.R.Serv.2d at 849. In *Sayre v. Abraham Lincoln Federal Savings & Loan,* 65 F.R.D. 379 (E.D.Pa.1974), the court found defendants not entitled to discover plaintiffs' financial position merely to generate an argument that the suit was being maintained. The *Sayre* court did not disagree, however, "with the proposition that unethical conduct by plaintiffs' counsel [might] impair his ability to adequately represent the class under Rule 23(a)(4)." *Id.* at 385. In addition, the court stated:

> [o]f course, were the questions concerning plaintiffs' understanding of their fee and costs arrangement to reveal a widespread expectation among plaintiffs that they were free from ultimate liability for funds advanced by counsel, or any other evidence that plaintiffs' counsel were

> mains ultimately liable for such expenses.

maintaining this suit, then perhaps the extent of plaintiffs' assets would become relevant as supportive evidence in determining whether plaintiffs' counsel were ethically adequate representatives of the class.

*Id.* at 385–86.

In *P.D.Q. Inc. of Miami v. Nissan Motor Corp.,* 61 F.R.D. 372 (S.D.Fla.1973), *aff'd,* 577 F.2d 910 (5th Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), the court avoided the issue of unethical representation of the class by certifying a modified class based on what the plaintiff could ultimately afford to pay in the way of costs of notice pursuant to *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (Eisen IV). The court in *Dennis v. Saks & Co.,* 20 Fed.R.Serv.2d 994 (S.D.N.Y.1975), held that if it became clear that the representatives could not afford the costs of notice in an antitrust class action, the case would have to be dismissed.

A case analogous to the case at bar is *Brame v. Ray Bills Finance Corp.,* 85 F.R.D. 568 (N.D.N.Y.1979), in which defendants challenged the agreement between plaintiffs and their counsel as a violation of DR 5–103(B), and asked the court to deny class certification on that basis. The court examined the alleged violation to determine the seriousness of the breach, if there was one, and the possibility that it would prejudice the class. Plaintiffs were represented by attorneys working for a Legal Services organization funded by public or charitable funds that provided free legal services to indigents. Even though one of the named plaintiffs did not fit the financial eligibility criteria, the court found that if there was a violation of DR 5–103(B) in that plaintiffs were not expected to reimburse the organization for expenses, the violation was a technical one and did not violate the underlying rationale of the rule. The court indicated that there was no violation because the personal funds of the plaintiffs' attorneys were not advanced and the attorneys had not personally acquired a stake in the litigation. There was no danger that a

(Emphasis added).

conflict of interest might interfere with the attorneys' exercise of independent professional judgment on behalf of the client. 85 F.R.D. at 568. The court cited ABA Committee on Ethics and Professional Responsibility, Informal Opinion 1361 (1976), which found no violation when the Legal Aid Society, and not the lawyers, advanced monies to indigent litigants.

This Court must now decide whether the agreements between plaintiffs and their respective counsel are in violation of the ABA Code of Professional Responsibility, and if so, whether the violation is such that it might prejudice the unnamed class members.

*The Cost Arrangements*

The Court permitted discovery on the propriety of maintaining the cases as class actions. *Doctor v. Seaboard Coast Line R. Co., supra.* In answers to defendants' interrogatories asking whether plaintiffs were willing and able to finance the costs of the action as a class action, the *Golub* plaintiffs stated:

> All costs and expenses which must be incurred in the course of litigation through trial will be advanced by the firm of Titus Marcus & Shapira. The firm does have the resources available to meet the financial requirements of this case. If the class Plaintiffs are successful in obtaining recovery in this case for the members of the class, it is anticipated that the costs and expenses incurred in connection with this lawsuit will be recovered from the Defendants. In the event that the proposed class representatives should lose this suit, the firm of Titus Marcus & Shapira will not, as a matter of policy, seek reimbursement from the class representatives for the costs and expenses incurred. The class

representatives have been informed that this is the intention of the law firm. Answer to Defendants' Second Set of Interrogatories on Class Representation, No. 8 (dated September 28, 1981).

Plaintiff Johnston responded to a similar inquiry:

> The law firm of Wiegandt, Ladenheim and Campbell has agreed to advance all costs of this suit. I understand that while I am ultimately responsible for these costs, the law firm has a policy that should this suit be unsuccessful, they will not seek to collect those costs from me.[4]

Answers to Defendants' Interrogatories (dated September 28, 1981).

Defendants contend that these agreements are in contravention of the ABA's Model Code of Professional Responsibility Disciplinary Rule 5–103(B), adopted in both Pennsylvania and Virginia.[5] Plaintiffs argue that their agreements do not violate DR 5–103(B). Their weak argument is that if it is not a violation of DR 5–103(B) for the lawyer to fail to discuss with the client the client's legal liability for reimbursement of expenses, *Jackson v. Travelers Insurance Co. of Hartford*, 403 F.Supp. 986, 999 (M.D. Tenn.1975), then it cannot be more incorrect for a lawyer to inform the client that the lawyer does not intend to seek reimbursement of expenses.

Whether the client actually assumed ultimate liability for the expenses is a legal question, not an ethical one. ABA Comm. on Professional Ethics, Informal Opinions, No. 1284 (1973). The Court finds that the agreements are a violation of DR 5–103(B). Plaintiffs' argument misses the mark. Although the failure of an attorney to discuss the client's liability with the client ahead of time is not a violation, this does not mean that the failure to hold the client ultimately

---

4. Although plaintiff mouthed the magic words about his ultimate responsibility for the costs, it is clear from Johnston's deposition that neither he, nor his counsel expect that he will pay anything if the suit is unsuccessful. Johnston deposition, 6–11 (October 2, 1981).

5. Virginia Code of Professional Responsibility, Rule 6:II:DR 5–103(B), 216 Va. 941 (1976);

Pennsylvania Code of Professional Responsibility, DR 5–103(B), 438 Pa. XXV (1970). The high courts in both states have approved DR 5–103(B). *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 234 S.E.2d 282 (1977); *In re: Berlant*, 458 Pa. 439, 328 A.2d 471 (1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

responsible is not a violation. Indeed, the ABA Committee on Professional Ethics has disapproved of the conduct of plaintiffs' counsel in the instant case:

[T]he client must ultimately be responsible for any costs which are advanced, and *if he is not willing to agree to this*, the lawyer should proceed with the suit as an individual suit or should withdraw. (Emphasis added) (Discussing class action).

ABA Comm. on Professional Ethics, Informal Opinion, No. 1326, (1975). *Accord*, ABA Informal Opinion, No. 1284, *supra*.

▮▮▮ This is because the basic purpose behind DR 5–103(B) is to prevent the attorney from acquiring a financial interest in the litigation which might interfere with his/her exercise of independent professional judgment, especially when it comes to deciding whether to settle the case. *See* EC 5–1, 5–7, 5–8, ABA Code of Professional Responsibility. *Brame v. Ray Bills Finance Corp., supra*, 85 F.R.D. 568. If the client is not financially responsible, the attorneys have free rein over the prosecution of the action. This is tantamount to the unacceptable situation of the attorney being a member of the class of litigants while serving as class counsel. *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3rd Cir.), *cert. denied*, 429 U.S. 830, 97

S.Ct. 90, 50 L.Ed.2d 94 (1976). In *Zylstra v. Safeway Stores, supra*, the Fifth Circuit, finding a violation of Canon 9, noted that:

whenever an attorney is confronted with a potential for choosing between actions which may benefit himself financially and an action which may benefit the class which he represents there is a reasonable possibility that some specifically identifiable impropriety will occur.

578 F.2d at 104.[6] The Court therefore finds that the agreements in question are a violation of the existing Disciplinary Rules.

▮▮ Plaintiffs argue that the Court should refuse to enforce DR 5–103(B), pointing to the trend of revision of that Disciplinary Rule.[7] They argue that the refusal to certify a class on that basis is contrary to the public interest. Plaintiffs assert that public policy dictates against allowing this rule to impede the prosecution of a class action for enforcement of the antitrust laws, and contend that "but for the possibility of maintaining the case as a class action, antitrust violations such as those alleged in this case would go unremedied."

In view of the six *parens* cases pending in this Court, including one in each of plaintiffs' respective states, this argument is unpersuasive.[8] Indeed, the Court finds that

---

**6.** The Court does not intimate that there has been or there will be improprieties on the part of counsel in the instant case. However, if the possibility exists that the law established in this case might enable some future counsel to engage in such improprieties, the Court cannot condone such actions.

**7.** The bar associations of California, New Jersey, Texas and the District of Columbia have amended DR 5–103(B) to the effect that the arrangement at issue would be expressly permitted in those states. Bar counsel for the Virginia State Bar has apparently informed plaintiffs' counsel that an amended version of the rule will be presented to the Council of the Virginia Bar in February, 1982, with the expectation that the Bar will petition the Supreme Court of Virginia to amend the rule in June, 1982. The ABA Commission on Evaluation of Professional Standards (Kutak Commission) has proposed an amendment, Rule 1.8(e), which reads as follows:

(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) A lawyer may advance court costs, expenses of litigation, and reasonable and necessary medical and living expenses, the repayment of which may be contingent upon the outcome of the matter; and (2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

**8.** The Court is aware that the *parens* cases do not protect the corporate plaintiff. Business entities are more able to protect themselves, however, than individual consumers. Businesses generally have greater resources and more at stake and thus have a greater motivation to finance the costs of a lawsuit. The Court also notes that the existence of the *parens patriae* vehicle for redress of antitrust injuries might require a finding under Rule 23(b)(3) that a class should not be certified because the class action is not superior to other available

enforcement of DR 5–103(B) in a class context is even more important than in an individual suit because of the added dangers inherent in the class situation. *See Gould v. Lumonics Research Ltd.*, 495 F.Supp. 294, 299, n.6 (N.D.Ill.1980). For instance, full disclosure and consent would be extremely difficult to obtain in a class action should a conflict of interest present itself. *Id.*

Although there is a great degree of court supervision in class actions, especially in view of the court's responsibility to supervise settlement arrangements, the Court finds that this is not a sufficient safeguard to protect against the dangers which might ensue from a ruling that the class may be certified. Neither is the mechanism of refusing to enforce a judgment against unnamed class members upon a finding that there was not adequate representation adequate protection. *But see Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973). This seems a circuitous route to prevent a harm that could be prevented in the first place by denying certification. A state that has a rule such as DR 5–103(B) has a legitimate interest in preventing the harm before it occurs. *See Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 464, 98 S.Ct. 1912, 1923, 56 L.Ed.2d 444 (1978). It is not for this Court to impede the effectuation of a state's regulation of its legal profession when there has been no serious argument that the regulation is unconstitutional. The states have "a compelling interest in the practice of professions within their boundaries, and . . . have broad power to establish standards for . . . regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).

This Court is concerned that putting its imprimatur on this ethical violation will facilitate other ethical violations, such as solicitation. The rationale for rules against solicitation propounded in *Ohralik v. Ohio*

*State Bar Ass'n, supra,* 436 U.S. at 464–47, 98 S.Ct. at 1922–24, is equally applicable to DR 5–103(B). If the Court allows attorneys to pay for a class action in which treble damages and attorneys fees are already recoverable, there is a possibility that the proverbial "ambulance chaser" might be turned into a "Toyota chaser," a situation entirely unnecessary in view of the existence of the *parens* cases providing for recovery at least for natural persons resident.

The Court's order on this motion is without prejudice to plaintiffs' renewing their motion should the laws change in either of the jurisdictions so as to allow the practices of plaintiffs' counsel, or should plaintiffs obtain new counsel with whom they have a different understanding.[9] *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972).

For the above reasons, it is this 2nd day of February, 1982, by the United States District Court for the District of Maryland, ORDERED:

That plaintiffs' motions for class certification BE, and the same ARE, hereby DENIED.

---

methods of adjudication of the controversy. *See In re: Montgomery County Real Estate Antitrust Litigation*, Civ. Action No. B–77–513, slip opinion at 4 (D.Md., filed July 17, 1978).

**9.** Should plaintiffs elect to proceed with present counsel, the litigants must present to the Court evidence that they have changed their agreement to meet the strictures of DR 5–103(B). If this happens, defendants will then be entitled to discovery on plaintiffs' finance ability to prosecute the action and pay the costs of notice. *See Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427 (W.D.Mo.1973).