DAVID A. COGGINS & others[1] vs. NEW ENGLAND PATRIOTS
FOOTBALL CLUB, INC., & others[2].

Middlesex. January 8, 1986. — May 14, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Judicial review, Class action, Judicial discretion, Intervention. *Attorney at Law,* Class action. *Corporation,* Reorganization, Merger, Stockholder, Valuation of stock, Officers and agents. *Fiduciary. Value.*

Judicial review of a cash freeze-out merger in which a controlling stockholder eliminates the minority interest in a corporation may be appropriate, even though the freeze-out is in technical compliance with G. L. c. 156B, § 98; furthermore, the dissenting stockholders are not limited to the statutory remedy of judicial appraisal where violations of fiduciary duties are found. [530-533]

In an action by dissenting stockholders of a public corporation seeking to overturn a cash freeze-out merger in which the controlling stockholder had eliminated the public ownership interest in the corporation, a professional football franchise, evidence warranted the judge's findings, based on his consideration of the totality of circumstances, including the purpose of the merger, the accuracy and adequacy of disclosure in connection with the merger, and the fairness of the price, that the freeze-out had been designed for the personal benefit of the controlling stockholder, and that the merger did not further the legitimate interests of the corporation; consequently, there was a violation of the majority stockholder's fiduciary duty to the minority stockholders. [533-535]

On review of a cash freeze-out merger in which the controlling stockholder of a public corporation had eliminated the minority dissenting stockholders' interest in circumstances indicating that the merger had not been for a legitimate business purpose, this court, stating that, while usually the appropriate remedy for an impermissible freeze-out is rescission of the merger, in this case, because of the passage of time since the merger and the changed position of third parties and other former stockholders,

---

[1] Coggins brings this class action on behalf of himself and certain other stockholders of the predecessor corporation of the present New England Patriots Football Club, Inc.

[2] Charles W. Sullivan, Mary H. Sullivan, and William H. Sullivan, Jr.

rescission would not be appropriate, remanded the case for a determination of the present value of the dissenting stockholders' interest in the corporation, as though the merger were rescinded, and reinstated the dissenting stockholders' claim for waste of corporate assets. [535-537]

In an action by dissenting stockholders of a public corporation seeking to overturn a cash freeze-out merger in which the controlling stockholder had eliminated the public ownership interest in the corporation, the judge did not abuse his discretion in certifying a class of stockholders under Mass. R. Civ. P. 23, "who have voted against the merger . . . but who have neither turned in their shares nor perfected their appraisal rights . . . [and who] desire only to void the merger," inasmuch as the good faith pro bono representation by counsel for the representative of the class was not a basis to overturn class certification. [537-538]

In an action by a certified class of dissenting stockholders of a public corporation seeking to overturn a cash freeze-out merger in which the controlling stockholder had eliminated the public ownership interest in the corporation, the judge erred as matter of law in allowing the permissive intervention, under Mass. R. Civ. P. 24 (b), of stockholders who were not initially part of the plaintiff class, where those stockholders seeking to join the class had voted for the merger and had previously rejected an invitation to intervene and join the class, having at that time elected to pursue a separate remedy. [538-539]

CIVIL ACTION commenced in the Superior Court on June 16, 1977.

The case was heard by *William G. Young, J.,* and was reported by him to the Appeals Court. The Supreme Judicial Court granted requests for direct review.

*Edward B. Hanify* for New England Patriots Football Club, Inc. (with him *George T. Finnegan & John D. Donovan, Jr.,* and, for Charles W. Sullivan & others, *Richard E. Bachman*).

*Edward P. Leibensperger & Irving J. Helman* (*David R. Schmahmann* with them) for the plaintiffs.

*Anthony Tarricone & Nathaniel S. Weiner* (*Gerard J. Clark & Camille F. Sarrouf* with them) for the interveners.

LIACOS, J. On November 18, 1959, William H. Sullivan, Jr. (Sullivan), purchased an American Football League (AFL) franchise for a professional football team. The team was to be the last of the eight original teams set up to form the AFL (now the American Football Conference of the National Football League). For the franchise, Sullivan paid $25,000. Four

months later, Sullivan organized a corporation, the American League Professional Football Team of Boston, Inc. Sullivan contributed his AFL franchise; nine other persons each contributed $25,000. In return, each of the ten investors received 10,000 shares of voting common stock in the corporation. Another four months later, in July, 1960, the corporation sold 120,000 shares of nonvoting common stock to the public at $5 a share.

Sullivan had effective control of the corporation from its inception until 1974. By April, 1974, Sullivan had increased his ownership of shares from 10,000 shares of voting stock to 23,718 shares, and also had acquired 5,499 shares of nonvoting stock. Nevertheless, in 1974 the other voting stockholders ousted him from the presidency and from operating control of the corporation. He then began the effort to regain control of the corporation — an effort which culminated in this and other lawsuits.

In November, 1975, Sullivan succeeded in obtaining ownership or control of all 100,000 of the voting shares, at a price of approximately $102 a share (adjusted cash value), of the corporation, by that time renamed the New England Patriots Football Club, Inc. (Old Patriots).[3] "Upon completion of the purchase, he immediately used his 100% control to vote out the hostile directors, elect a friendly board and arrange his resumption of the presidency and the complete control of the Patriots. In order to finance this coup, Sullivan borrowed approximately $5,348,000 from the Rhode Island Hospital National Bank and the Lasalle National Bank of Chicago. As a condition of these loans, Sullivan was to use his best efforts to reorganize the Patriots so that the income of the corporation could be devoted to the payment of these personal loans and the assets of the corporation pledged to secure them. At this point they were secured by all of the voting shares held by Sullivan. In order to accomplish in effect the assumption by the corporation of Sullivan's personal obligations, it was nec-

---

[3] Sullivan owned 87,320 shares outright, and had entered a contract with his cousin, the defendant Mary H. Sullivan, providing for future purchase of her 12,680 shares and an irrevocable proxy to vote her shares.

essary, as a matter of corporate law, to eliminate the interest of the nonvoting shares." [4]

On October 20, 1976, Sullivan organized a new corporation called the New Patriots Football Club, Inc. (New Patriots). The board of directors of the Old Patriots and the board of directors of the New Patriots [5] executed an agreement of merger of the two corporations providing that, after the merger, the voting stock of the Old Patriots would be extinguished, the nonvoting stock would be exchanged for cash at the rate of $15 a share, and the name of the New Patriots would be changed to the name formerly used by the Old Patriots. [6] As part of this plan, Sullivan gave the New Patriots his 100,000 voting shares of the Old Patriots in return for 100% of the New Patriots stock.

General Laws c. 156B, § 78 (c) (1) (iii), as amended through St. 1976, c. 327, required approval of the merger agreement by a majority vote of each class of affected stock. Approval by

---

[4] These findings of fact were made by a Federal District Court judge in the unreported decision of *Pavlidis* v. *New England Patriots Football Club, Inc.*, No. 76-4240-S (D. Mass. July 22, 1983), aff'd in part and rev'd in part, 737 F.2d 1227 (1st Cir. 1984). The trial judge in the case at bar adopted these findings as his own.

[5] The two boards were identical. Each member of the board of directors of the Old Patriots (as constituted after Sullivan had regained control) was a member of the board of directors of the New Patriots. Each of the officers of the Old Patriots held the same position with the New Patriots.

[6] Additional findings as to the purpose of this merger made by the Federal judge, as adopted by the trial judge, are: "Purported reasons for the merger [were] stated in the [proxy materials]. Three reasons are given: (1) the policy of the [National Football League] to discourage public ownership of member football teams, (2) the difficulty in reconciling management's obligations to the NFL with its obligations to public stockholders, and (3) the cost and possible revelation of confidential information resulting from the obligations of publicly owned corporations to file reports with various public bodies. . . . I find, however, that while some of the stated reasons may have been useful by-products of the merger, the true reason for the merger was to enable Sullivan to satisfy his $5,348,000 personal obligation to the banks. The merger would not have occurred for the considerations stated as reasons in the Proxy Statement. . . . The Proxy Statement is an artful attempt to minimize the future profitability of the Patriots and to put a wash of corporate respectability over Sullivan's diversion of the corporation's income for his own purposes."

the voting class, entirely controlled by Sullivan, was assured. The merger was approved by the class of nonvoting stockholders at a special meeting on December 8, 1976.[7] On January 31, 1977, the merger of the New Patriots and the Old Patriots was consummated.

David A. Coggins (Coggins) was the owner of ten shares of nonvoting stock in the Old Patriots. Coggins, a fan of the Patriots from the time of their formation, was serving in Vietnam in 1967 when he purchased the shares through his brother. Over the years, he followed the fortunes of the team, taking special pride in his status as an owner.[8] When he heard of the proposed merger, Coggins was upset that he could be forced to sell. Coggins voted against the merger and commenced this suit on behalf of those stockholders, who, like himself, believed the transaction to be unfair and illegal. A judge of the Superior Court certified the class as "stockholders of New England Patriots Football Club, Inc. who have voted against the merger . . . but who have neither turned in their shares nor perfected their appraisal rights . . . [and who] desire only to void the merger."

The trial judge found in favor of the Coggins class but determined that the merger should not be undone. Instead, he ruled that the plaintiffs are entitled to rescissory damages, and he ordered that further hearings be held to determine the amount of damages. After the judge rendered his decision, motions were made to permit intervention by plaintiffs in two related cases, *Pavlidis* v. *New England Patriots Football Club, Inc.*, 737 F.2d 1227 (1st Cir. 1984), and *Sarrouf* v. *New England*

---

[7] On the date of the meeting, 139,800 shares of nonvoting stock were outstanding, held by approximately 2,400 stockholders. The Sullivan family owned 10,826 shares. Of the remaining 128,974, a total of 71,644 voted in favor of the merger, 22,795 did not vote, and 34,535 voted against. The plaintiffs in this case are stockholders of 2,291 of the 34,535 voting against the merger.

Prior to the 1976 amendment of G. L. c. 156B, § 78 (c) (1) (iii), that section required a two-thirds vote of approval for a merger from each class of stock. The two-thirds requirement was reinstated in 1981 by St. 1981, c. 298, § 4.

[8] It was, in part, the goal of the Old Patriots, in offering stock to the public, to generate loyal fans.

*Patriots Football Club, Inc., post* 542 (1986).[9] The trial judge allowed the motion of the *Pavlidis* plaintiffs, and allowed the motion of the *Sarrouf* plaintiffs, but only as to those plaintiffs in the *Sarrouf* action who were not granted relief in that case. On motion of the defendants in this case, the trial judge reported the case to the Appeals Court. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted applications by both parties for direct appellate review.

We conclude that the trial judge was correct in ruling that the merger was illegal and that the plaintiffs have been wronged. Ordinarily, rescission of the merger would be the appropriate remedy. This merger, however, is now nearly ten years old, and, because an effective and orderly rescission of the merger now is not feasible, we remand the case for proceedings to determine the appropriate monetary damages to compensate the plaintiffs. We conclude further that intervention by the *Pavlidis* plaintiffs should not have been allowed, and that no stockholders in the *Sarrouf* class should be allowed to intervene as plaintiffs in the *Coggins* case.

*Scope of judicial review.* In deciding this case, we address an important corporate law question: What approach will a Massachusetts court reviewing a cash freeze-out merger employ? This question has been considered by courts in a number of other States. See A.M. Borden, Going Private § 4.09, and cases cited (rev. 1986); 1 M. Lipton & E.H. Steinberger, Takeovers and Freezeouts § 9.05, and cases cited (rev. 1986).

The parties have urged us to consider the views of a court with great experience in such matters, the Supreme Court of Delaware. We note that the Delaware court announced one test

---

[9] The plaintiffs in *Pavlidis* "voted to accept the New Patriots' offer of $15.00 per share for their common stock in the [Old] Patriots corporation. They now claim that they were induced to accept this offer by a misleading proxy statement . . . contain[ing] various misrepresentations . . . . They seek to rescind the merger or to receive a higher price per share for the stock they sold." 737 F.2d at 1229-1230. The plaintiffs in *Sarrouf* objected to the merger but sought the statutory remedy of appraisal. See *Sarrouf, supra* at 543; G. L. c. 156B, § 85 (1984 ed.).

By motion after the publication of this decision, the interveners claim that only 71,000 of the 121,000 shares represented in the *Pavlidis* litigation were voted for the merger. This claim apparently was not made before the United States Court of Appeals. The interveners also failed to make this

in 1977, but recently has changed to another.[10] In *Singer* v. *Magnavox Co.*, 380 A.2d 969, 980 (Del. 1977), the Delaware court established the so-called "business-purpose" test, holding that controlling stockholders violate their fiduciary duties when they "cause a merger to be made for the sole purpose of eliminating a minority on a cash-out basis." *Id.* at 978. In 1983, Delaware jettisoned the business-purpose test, satisfied that the "fairness" test "long . . . applicable to parent-subsidiary mergers, *Sterling* v. *Mayflower Hotel Corp.*, Del. Supr., 93 A.2d 107, 109-110 (1952), the expanded appraisal remedy now available to stockholders, and the broad discretion of the Chancellor to fashion such relief as the facts of a given case may dictate" provided sufficient protection to the frozen-out minority. *Weinberger* v. *UOP, Inc.*, 457 A.2d 701, 715 (Del. 1983).[11] "The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." *Id.* at 710. "The concept of fairness has two basic aspects: fair dealing and fair price." *Id.* at 711. We note that the "fairness" test to which the Delaware court now has adhered is, as we later show, closely related to the views expressed in our decisions. Unlike the Delaware court, however, we believe that the "business-purpose" test is an additional useful means under our statutes and case law for examining a transaction in which a controlling stockholder eliminates the minority interest in a corporation. Cf. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 851 (1976). This concept of fair dealing is not limited to close corporations but applies to judicial review

---

claim in this court at the proper time and in the proper manner, and we decline to take notice of it now.

[10] We are not bound, of course, in our interpretation of Massachusetts law by decisions of the courts of our sister States interpreting their laws. We have said before, however, that we consider such decisions instructive. *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 726 (1979).

[11] See Note, Delaware Improves Its Treatment of Freezeout Mergers: *Weinberger* v. *UOP, Inc.*, 25 B.C.L. Rev. 685 (1984). That the new Delaware approach is not without its difficulties is illustrated by the opinion in *Rabkin* v. *Philip A. Hunt Chem. Corp.*, 498 A.2d 1099 (Del. 1985).

of cash freeze-out mergers. See *Horizon House-Microwave, Inc.* v. *Bazzy,* 21 Mass. App. Ct. 190, 198 n.11 (1985).

The defendants argue that judicial review of a merger cannot be invoked by disgruntled stockholders, absent illegal or fraudulent conduct. They rely on G. L. c. 156B, § 98 (1984 ed.).[12] In the defendants' view, "the Superior Court's finding of liability was premised solely on the claimed inadequacy of the offering price." Any dispute over offering price, they urge, must be resolved solely through the statutory remedy of appraisal.

We have held in regard to so called "close corporations" that the statute does not divest the courts of their equitable jurisdiction to assure that the conduct of controlling stockholders does not violate the fiduciary principles governing the relationship between majority and minority stockholders. *Pupecki* v. *James Madison Corp.,* 376 Mass. 212, 216-217 (1978) (when controlling stockholder fails to assure that corporation receives adequate consideration for its assets, transaction is illegal or fraudulent, and G. L. c. 156B, § 98, does not foreclose review).[13] "Where the director's duty of loyalty to the corporation is in conflict with his self-interest the court will vigorously scrutinize the situation." *American Discount Corp.* v. *Kaitz,* 348 Mass. 706, 711 (1965). The court is justified in exercising its equitable power when a violation of fiduciary duty is claimed.

The dangers of self-dealing and abuse of fiduciary duty are greatest in freeze-out situations like the Patriots merger, where

---

[12] "The enforcement by a stockholder of his right to receive payment for his shares in the manner provided in this chapter shall be an exclusive remedy except that this chapter shall not exclude the right of such stockholder to bring or maintain an appropriate proceeding to obtain relief on the ground that such corporate action will be or is illegal or fraudulent as to him." G. L. c. 156B, § 98.

[13] We discussed the nature of a close corporation at some length in *Donahue* v. *Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578 (1975). We need not apply the stricter principle of good faith applied to a close corporation in *Donahue, supra* at 593-594, to controlling stockholders in a public corporation to conclude, nevertheless, that the "less stringent standard of fiduciary duty to which directors and stockholders of all corporations must adhere" may warrant judicial scrutiny beyond the specified statutory appraisal right.

a controlling stockholder and corporate director chooses to eliminate public ownership.[14] It is in these cases that a judge should examine with closest scrutiny the motives and the behavior of the controlling stockholder. A showing of compliance with statutory procedures is an insufficient substitute for the inquiry of the courts when a minority stockholder claims that the corporate action "will be or is illegal or fraudulent as to him." G. L. c. 156B, § 98. *Leader* v. *Hycor, Inc.,* 395 Mass. 215, 221 (1985) (judicial review may be had of claims of breach of fiduciary duty and unfairness).

A controlling stockholder who is also a director standing on both sides of the transaction bears the burden of showing that the transaction does not violate fiduciary obligations. "As was said in *Geddes* v. *Anaconda Copper Mining Co.,* 254 U.S. 590, 599 [1921]: 'The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character.' This rule is applicable even though no corruption or dishonesty is shown . . . ." *Lazenby* v. *Henderson,* 241 Mass. 177, 180 (1922). Cf. *Weinberger* v. *UOP, Inc., supra* (similar standard of review). Judicial inquiry into a freeze-out merger in technical compliance with the statute may be appropriate, and the dissenting stockholders are not limited to the statutory remedy of judicial appraisal where violations of fiduciary duties are found.

*Factors in judicial review.* The defendants concentrate their arguments on the finding of the Superior Court judge that the offered price for nonvoting shares was inadequate. They claim that his conclusion that rescissory damages are due these plain-

---

[14] All freeze-out mergers are not alike. See Brudney & Chirelstein, A Restatement of Corporate Freezeouts, 87 Yale L.J. 1354, 1356, and sources cited (1978).

tiffs is based wholly on a finding of price inadequacy. The trial judge, however, considered the totality of the circumstances, including the purpose of the merger, the accuracy and adequacy of disclosure in connection with the merger, and the fairness of the price. The trial judge correctly considered the totality of circumstances, even though he failed to attach adequate significance to each of these factors and to structure them correctly in his analysis.

Judicial scrutiny should begin with recognition of the basic principle that the duty of a corporate director must be to further the legitimate goals of the corporation. The result of a freeze-out merger is the elimination of public ownership in the corporation. The controlling faction increases its equity from a majority to 100%, using corporate processes and corporate assets. The corporate directors who benefit from this transfer of ownership must demonstrate how the legitimate goals of the corporation are furthered. A director of a corporation violates his fiduciary duty when he uses the corporation for his or his family's personal benefit in a manner detrimental to the corporation. *Widett & Widett* v. *Snyder,* 392 Mass. 778, 785-786 (1984). See *Buckman* v. *Elm Hill Realty Co.,* 312 Mass. 10, 15 (1942). Because the danger of abuse of fiduciary duty is especially great in a freeze-out merger, the court must be satisfied that the freeze-out was for the advancement of a legitimate corporate purpose. If satisfied that elimination of public ownership is in furtherance of a business purpose, the court should then proceed to determine if the transaction was fair by examining the totality of the circumstances.

The plaintiffs here adequately alleged that the merger of the Old Patriots and New Patriots was a freeze-out merger undertaken for no legitimate business purpose, but merely for the personal benefit of Sullivan. While we have recognized the right to "selfish ownership" in a corporation, such a right must be balanced against the concept of the majority stockholder's fiduciary obligation to the minority stockholders. *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass. 842, 851 (1976). Consequently, the defendants bear the burden of proving, first, that the merger was for a legitimate business purpose, and,

second, that, considering the totality of the circumstances, it was fair to the minority.

The decision of the Superior Court judge includes a finding that "the defendants have failed to demonstrate that the merger served any valid corporate objective unrelated to the personal interests of the majority shareholders. It thus appears that the sole reason for the merger was to effectuate a restructuring of the Patriots that would enable the repayment of the [personal] indebtedness incurred by Sullivan . . . ." The trial judge considered the defendants' claims that the policy of the National Football League (NFL) requiring majority ownership by a single individual or family made it necessary to eliminate public ownership. He found that "the stock ownership of the Patriots as it existed just prior to the merger fully satisfied the rationale underlying the policy as expressed by NFL Commissioner Pete Rozelle. Having acquired 100% control of the voting common stock of the Patriots, Sullivan possessed unquestionable authority to act on behalf of the franchise at League meetings and effectively foreclosed the possible recurrence of the internal management disputes that had existed in 1974. Moreover, as the proxy statement itself notes, the Old Patriots were under no legal compulsion to eliminate public ownership." Likewise, the defendants did not succeed in showing a conflict between the interests of the league owners and the Old Patriots' stockholders. We perceive no error in these findings. They are fully supported by the evidence. Under the approach we set forth above, there is no need to consider further the elements of fairness of a transaction that is not related to a valid corporate purpose.

*Remedy*. The plaintiffs are entitled to relief. They argue that the appropriate relief is rescission of the merger and restoration of the parties to their positions of 1976. We agree that the normally appropriate remedy for an impermissible freeze-out merger is rescission. Because Massachusetts statutes do not bar a cash freeze-out, however, numerous third parties relied in good faith on the outcome of the merger. The trial judge concluded that the expectations of those parties should not be upset, and so chose to award damages rather than rescission.

We recognize that, because rescission is an equitable remedy, the circumstances of a particular case may not favor its employment. The goals of a remedy instituted after a finding that a merger did not serve the corporate purpose should include furthering the interests of the corporation. Ordinarily, we would remand with instructions for the trial judge to determine whether rescission would be in the corporation's best interests, but such a remedy does not appear to be equitable at this time. This litigation has gone on for many years. There is yet at least another related case pending (in the Federal District Court). Furthermore, other factors weigh against rescission. The passage of time has made the 1976 position of the parties difficult, if not impossible, to restore. A substantial number of former stockholders have chosen other courses and should not be forced back into the Patriots corporation. In these circumstances the interests of the corporation and of the plaintiffs will be furthered best by limiting the plaintiffs' remedy to an assessment of damages.

We do not think it appropriate, however, to award damages based on a 1976 appraisal value. To do so would make this suit a nullity, leaving the plaintiffs with no effective remedy except appraisal, a position we have already rejected. Rescissory damages must be determined based on the present value of the Patriots, that is, what the stockholders would have if the merger were rescinded. Determination of the value of a unique property like the Patriots requires specialized expertise, cf. *Correia* v. *New Bedford Redevelopment Auth.*, 375 Mass. 360, 367 (1978) (valuation of unusual property may require unusual approach), and, while the trial judge is entitled to reach his own conclusion as to value, *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 731 (1979), the credibility of testimony on value will depend in part on the familiarity of the witness with property of this kind. On remand, the judge is to take further evidence on the present value of the Old Patriots on the theory that the merger had not taken place.

Each share of the Coggins class is to receive, as rescissory damages, its aliquot share of the present assets.[15]

The trial judge dismissed the plaintiffs' claims against the individual defendants based on waste of corporate assets. The remedy we order is intended to give the plaintiffs what they would have if the merger were undone and the corporation were put back together again. The trial judge's finding that the sole purpose of the merger was the personal financial benefit of William H. Sullivan, Jr., and the use of corporate assets to accomplish this impermissible purpose, leads inescapably to the conclusion that part of what the plaintiffs otherwise would have benefitted by, was removed from the corporation by the individual defendants. We reverse the dismissal of the claim for waste of corporate assets and remand this question to the trial court. The present value of the Patriots, as determined on remand, should include the amount wrongfully removed or diverted from the corporate coffers by the individual defendants.

*Class certification.* This action was certified as a class action by order of a Superior Court judge. The defendants maintain that no class should have been certified. They argue that "instigation of the action by a lawyer, the plaintiff's ignorance of the facts, his disclaimer of financial responsibility for the case, and his delegation of unfettered discretion to the lawyer render him a constitutionally inadequate representative of any class." The decision to certify a class under Mass. R. Civ. P. 23, 365 Mass. 767 (1974), is within the judge's broad discretion. *Brophy* v. *School Comm. of Worcester,* 6 Mass. App. Ct. 731, 735 (1978). Our review of the class certification order is, therefore, aimed at determining whether the judge abused his discretion.

The judge found that the class could be certified because "(1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law and fact common to the class, (3) the claims of the Plaintiff are typical of the class he is certified to represent, and (4) he will fairly and

---

[15] Our discussion in *Sarrouf* v. *New England Patriots Football Club, Inc., post* 542 (1986), of appropriate methods of valuation may be of some help to the remand judge.

adequately protect the interests of the class." The defendants object that Coggins does not fairly and adequately represent the class because he has delegated too much authority to his lawyers, and he is not financially responsible for the costs.[16] The defendants rely on Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178-179 (1974), which they claim held that the due process considerations underlying adoption of Fed. R. Civ. P. 23 require the plaintiff himself to bear the costs of prosecuting the class action. In Eisen, the Court was construing Fed. R. Civ. P. 23 and discussing the burden of paying for the cost of notice. We agree with the plaintiffs that Eisen did not reach the question whether the plaintiff's counsel may assume costs for pro bono reasons in a class action lawsuit if it is unsuccessful. Accord Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 351-352 (1983); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 349-350 (1978). Addressing the effect of pro bono representation, the defendants cite In re Mid-Atlantic Toyota Antitrust Litigation, 93 F.R.D. 485 (D. Md. 1982). The judge of the Federal District Court found the fee arrangement in Mid-Atlantic violative of the ABA Model Code of Professional Responsibility DR 5-103(B) (1980). Mid-Atlantic, supra at 489. Inherent in the acquisition by counsel of a financial interest in litigation is the danger, cited by the Mid-Atlantic court, supra at 490, that counsel will not exercise independent professional judgment. The judge here examined that issue and was satisfied that counsel was acting on a pro bono basis in good faith. There was no abuse of discretion. The class certification was proper.

Intervention by the Sarrouf and the Pavlidis plaintiffs. The trial judge allowed the permissive intervention, under Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974), of stockholders who were not initially part of the plaintiff class. A judge has broad discretion in considering permissive intervention. Corcoran v. Wigglesworth Mach. Co., 389 Mass. 1002, 1003 (1983). A

---

[16] Counsel for Coggins has undertaken his representation pro bono publico. This aspect of the case has been the subject of inquiry by Bar Counsel, who has discovered no ethical violation. It is not before us, other than collaterally, in our review of class certification.

judge's decision will not be upheld, of course, when its result is an error of law. *Check* v. *Kaplan,* 280 Mass. 170, 179-180 (1932) (allowance of intervention overturned due to error of law). See *Hallett* v. *Moore,* 282 Mass. 380, 388-390 (1933). Compare *Stackpole* v. *Brewster Free Academy,* 355 Mass. 774, 775-776 (1969) (no abuse of discretion in denying intervention to those who could not prevail). We conclude that the judge erred as matter of law. The *Pavlidis* class must stand or fall on the merits of its own pending Federal proceeding. The interest of the *Pavlidis* plaintiffs in this action is only vicarious and attenuated.

Intervention by these plaintiffs is discomforting for the reason that they rejected an invitation to intervene and join the *Coggins* plaintiffs in this battle early in the action. Having elected to pursue a claim based on inadequate disclosure seeking monetary damages, they had chosen their remedy and should not be permitted now to undo that choice. See *Prudential Ins. Co.* v. *Mason,* 301 Mass. 82, 85 (1938) ("A party seeking relief may either affirm a transaction or avoid it. He cannot do both"); *Roche* v. *Gryzmish,* 277 Mass. 575, 579 (1931) (plaintiff may seek damages or rescission, but not both); *Kimball* v. *Cunningham,* 4 Mass. 502, 506 (1808) (same); *Hewitt* v. *Hayes,* 205 Mass. 356, 364 (1910) (knowledgeable choice of one of two inconsistent remedies bars choosing other). Additionally, intervention at this late date is not timely. In *Delaware Valley Citizens' Council for Clean Air* v. *Pennsylvania,* 674 F.2d 970, 974 (3d Cir. 1982), the United States Court of Appeals said, "a motion to intervene after entry of a decree should be denied except in extraordinary circumstances." The trial judge erred in permitting intervention by the *Pavlidis* plaintiffs.

The *Sarrouf* plaintiffs who were allowed to intervene are those denied relief by the trial judge in *Sarrouf*. In light of our holding in *Sarrouf, supra* at 554, there are no interveners remaining from that action who have any rights to intervene in this action.

*Summary.* The freeze-out merger accomplished by William H. Sullivan, Jr., was designed for his own personal benefit to

eliminate the interests of the Patriots' minority stockholders. The merger did not further the interests of the corporation and therefore was a violation of Sullivan's fiduciary duty to the minority stockholders, and so was impermissible. In most cases we would turn to rescission as the appropriate remedy. In the circumstances of this case, however, rescission would be an inequitable solution. Therefore, we remand for a determination of the present value of the nonvoting stock, as though the merger were rescinded. The claim for waste of corporate assets brought against the individual defendants is reinstated. Those stockholders who voted against the merger, who did not turn in their shares, who did not perfect their appraisal rights, but who are part of the *Coggins* class, are to receive damages in the amount their stock would be worth today, plus interest at the statutory rate.

The class action was certified properly. The good-faith pro bono representation by Coggins's counsel is not a basis to overturn class certification.

Plaintiffs from the related Federal action, *Pavlidis* v. *New England Patriots Football Club, Inc.,* 737 F.2d 1227 (1st Cir. 1984), are not to be permitted to intervene at this late stage. Plaintiffs from the *Sarrouf* class are left to the judicial remedy they selected and cannot intervene in this case.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*