J. RICHARD NEDDER *vs.* KNAPP SHOES, INC.

No. 90-P-848.

Worcester. February 14, 1992. - April 28, 1992.

Present: FINE, JACOBS, & LAURENCE, JJ.

*Contract*, Employment, Option, Performance and breach. *Damages*, Employment contract.

In an employment contract dispute, the terms of the contract were to be read together with the terms of a "management ownership agreement" in order to give effect to the intention of the parties with respect to the repurchase by the corporate employer of stock held by the employee. [465-466]

In an employment contract dispute, the terms of the employment contract set forth exceptions to a corporation's policies under a "management ownership agreement" with respect to the price at which the corporation would repurchase stock from the employee, and in the circumstances, the terms of the employment agreement governed. [466-467]

As a result of a corporation's breach of contract with its employee, the employee was excused from further obligations under the contract with respect to requesting the corporation to repurchase his stock, and he was entitled to damages, based on the repurchase price set forth in his employment agreement, on either an expectancy or a reliance theory. [467-468]

CIVIL ACTION commenced in the Superior Court Department on June 21, 1989.

The case was heard by *William H. Welch*, J.

*Roy A. Bourgeois* for the plaintiff.

*Ronald B. Shwartz* for the defendant.

FINE, J. When the plaintiff, J. Richard Nedder, was sixty years of age, with a successful career in the shoe business behind him, he entered upon employment with the defendant, Knapp Shoes, Inc. (Knapp), a major shoe retailer, distributor, and manufacturer. In the course of negotiations for that employment, he expressed an interest in buying stock in Knapp, a closely held corporation. Nedder and Knapp signed

an agreement on July 25, 1986, for Nedder to be employed for a five-year period as senior vice president in charge of sales and marketing at an annual salary of $145,000. The agreement provided as follows with respect to the purchase of stock:

> "Stock: The Employee agrees that, simultaneous with the execution of this Agreement, he will purchase 120,000 shares of the Corporation's common stock at a purchase price of One and 10/100 ($1.10) Dollar per share and the Corporation agrees to sell such shares to Employee. The Employee agrees that these shares are subject to the Voting Trust Agreement dated as of April 24, 1985. . . .
>
> "Upon the Employee's death or termination of employment, he, or his estate, shall sell the Employee's shares to the Corporation pursuant to the terms of the Management Ownership Agreement . . . .
>
> "The Corporation shall, in the event of a sale of the Employee's shares to the Corporation during the term of this Agreement as a result of the Employee's death or the Employee's written request on or before July 1, 1991 that the Corporation purchase such shares on July 31, 1991, purchase the shares from the Employee or his estate for a sum equal to the greater of a) $1.10, $1.23, $1.38, $1.55, $1.73, $1.94 per share for the 12 months ending 7/31/86 through 7/31/91 respectively multiplied by the number of shares sold or b) the book value per share multiplied by the number of shares sold. The minimum purchase price shall terminate upon the expiration of the Agreement."

The "Voting Trust Agreement," referred to in Nedder's employment contract, restricted shareholders' voting rights. The "Management Ownership Agreement" (MOA), also referred to, restricted the right of shareholders to alienate their stock, and it set forth a procedure for the corporation in the first instance, and then the other shareholders, to exercise an option to purchase shares at book value upon the death or ter-

mination of employment of a shareholder. The MOA provided, further, that "[a]ny purchase of stock by the Corporation hereunder shall be solely out of legally available surplus."

Knapp's directors approved Nedder's employment contract and the sale to him of 120,000 shares of Knapp stock for $132,000. Nedder thereupon purchased the stock and undertook his employment responsibilities. On August 18, 1987, Nedder was promoted to the position of president and chief operating officer. The employment agreement was amended to reflect his new duties and an increase in his salary to $165,000. In November of 1987, he purchased an additional 12,621 shares for which he paid $19,436.34. Between April and May of 1989, the chairman of Knapp's board and its major stockholder sought Nedder's retirement. Thereafter, Nedder was prevented from performing the duties of his office. The present suit for breach of contract was brought on June 21, 1989. Nedder sought damages based upon lost salary and benefits for the remainder of the five-year term and for Knapp's refusal, presumably blamed on Knapp's financial condition, to repurchase his stock. As an alternative to recovering damages for the refusal to repurchase his stock, he sought specific performance of the stock repurchase provision.

After a jury-waived trial in December of 1989, the judge found that there had been a breach of the employment contract. He ordered that the defendant continue to pay Nedder's salary and benefits through July of 1991 in accordance with the contract,[1] but he denied Nedder any relief based upon the stock purchase agreement. With respect to the stock, the judge reasoned: first, that, even if Nedder had the right to have Knapp repurchase his stock at the prices stated in the agreement, that right would exist only if Nedder made a written request of the corporation to that effect on July 31, 1991, and Nedder had not done so; second, that the obliga-

---

[1] Pursuant to an agreement between the parties reached in connection with an earlier request by Nedder for a preliminary injunction, Nedder's salary and benefits were being paid at the time of trial.

tion to repurchase the stock would exist only on July 31, 1991, and not at the time of trial in December of 1989; and third, that, according to the MOA, any purchase of stock by the corporation had to be out of "legally available surplus," and it was unlikely that Knapp would have any such surplus on July 31, 1991.

Nedder's appeal focuses on the stock repurchase agreement in relation to the 120,000 shares originally purchased. His claim for damages for lost salary and benefits is now moot. As to the subsequent stock purchase he made in November of 1987, the judge found that it was not subject to the employment agreement, and Nedder does not argue on appeal that that conclusion was erroneous.

Nedder contends that his employment contract entitled him to have Knapp repurchase the 120,000 shares on July 31, 1991, at the price set forth in the agreement. Thus, as a remedy for the breach of the employment contract, he claims he was entitled to recover damages based either upon the value of that repurchase right, determined as of the date of the breach, or his expenditures for the stock in reliance on the contract. Knapp, on the other hand, argues that Nedder's rights are defined in the MOA under which Knapp, first, and then its shareholders, would have an option, but not an obligation, to purchase the stock, and to do so at no more than book value. Further, under the MOA, Knapp contends, any purchase of stock would have to be out of "legally available surplus," and the judge, without defining the phrase, found there was none. The phrase, "legally available surplus," is susceptible of several possible interpretations, but on appeal the plaintiff neither offers a discussion of its meaning, nor argues that the judge's finding that there was no such surplus is clearly erroneous. Thus, unless a sale by Nedder under the minimum price clause of his employment contract would not have been a sale pursuant to the MOA, we would affirm the decision denying him damages.

We reject Knapp's argument that the MOA precludes Nedder's right to damages. It is true that the employment contract, drafted by Nedder's attorney, refers to the MOA.

The two documents must be read together in a sensible way, however, to give effect to the intention of the parties. See *Chelsea Indus., Inc.* v. *Florence*, 358 Mass. 50, 55 (1970); *Gilmore* v. *Century Bank & Trust Co.*, 20 Mass. App. Ct. 49, 56 (1985); *Chase Commercial Corp.* v. *Owen*, ante 248, 250-251 (1992).

The employment agreement bound Nedder generally to sell the stock upon his death or termination "pursuant to the terms of the [MOA]." A separate clause in the employment contract, however, sets forth his right, in two limited situations, to sell his stock to the corporation at certain stated minimum prices even if the prices should happen to exceed book value. One situation is his death during the term of the contract. The other is by requesting in writing no later than July 1, 1991, that Knapp repurchase his shares. on July 31, 1991. The separate clause setting forth the minimum resale prices, specifically negotiated by the parties and making no mention of the MOA, is strikingly inconsistent with the MOA as to the price to be paid for the shares. The effect of the separate clause is that, as part of his employment contract, Nedder received an option, which had to be exercised by July 1, 1991, to have Knapp repurchase the stock either at his death, if within the five-year period, or at the end of the five-year period, at a minimum price reflecting his investment, plus a reasonable fixed rate of return. It is not surprising that the parties would have agreed to such an arrangement at the outset of the employment relationship. The temporary use of the funds presumably would have been of benefit to Knapp. Nedder, on the other hand, would naturally have been concerned about the safety of funds he was taking from his retirement fund, yet desirous of the opportunity to benefit should Knapp prosper while he was in a management position.

The provision for a minimum purchase price during the term of the contract would be meaningless if, as under the MOA, the corporation had no obligation to repurchase the stock. Reasonably construed, the clause setting forth the

minimum purchase prices is an exception to the general re-
quirement that any stock be sold pursuant to the terms of the
MOA. As we understand the arrangement, the general provi-
sion requiring Nedder to sell his stock pursuant to the MOA
would be applicable except in the two limited situations gov-
erned by the separate clause in the employment contract set-
ting forth the minimum prices. Thus, it would apply,
whatever the circumstances, to any request to sell the stock
made for the first time by Nedder or his estate after July 1,
1991. As a sale pursuant to the option in Nedder's employ-
ment contract would not be a sale under the MOA, the pro-
vision in the MOA requiring as a condition of any stock re-
purchase that there be "legally available surplus" is not
applicable.

As a result of Knapp's termination of Nedder's employ-
ment in breach of the contract, Nedder was deprived not
only of the right to his continued employment, but also of his
right to exercise the repurchase option. We do not agree with
the judge's conclusion that Nedder's claim was barred by his
failure to request in writing that Knapp repurchase his
shares on July 31, 1991. Nedder's right to damages arose
from Knapp's substantial breach of the contract, and he was
excused from any further obligations under the contract. See
*Cutter* v. *Gillette*, 163 Mass. 95, 97 (1895); *Ward* v. *Ameri-
can Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 101 (1983).
Compare *Maddaloni* v. *Western Mass. Bus Lines, Inc.*, 386
Mass. 877, 881, 884 (1982).

Nedder sought recovery of damages on either an expec-
tancy or a reliance theory. The difference in this case would
not be significant. Recovery on either theory would afford
him a return of his investment with interest. Computing the
damages based upon the contract, he would be entitled to
damages in the amount of $1.55 per share, the price which
would have been paid in the fourth year when the breach
occurred, for 120,000 shares, or a total of $186,000. In fair-
ness, of course, he should be required to return the stock to
Knapp, thereby converting the award to a rescissory remedy,
which we consider fair and appropriate in the circumstances.

Compare *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 536, 540 (1986).

Accordingly, the judgment is amended as follows. Paragraphs 5 and 6 are deleted, and a new paragraph 5 shall be substituted stating that, upon tender by Nedder of 120,000 shares of Knapp stock, the defendant shall pay the plaintiff the amount of $186,000, plus interest from the date of the demand, June 21, 1989.

*So ordered.*