CAMILLE F. SARROUF & others[1] *vs.* NEW ENGLAND PATRIOTS
FOOTBALL CLUB, INC.

Norfolk. January 8, 1986. — May 14, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Corporation,* Valuation of stock, Stockholder. *Notice. Value. Interest.*

In an action under G. L. c. 156B, §§ 86-98, by stockholders seeking appraisal
   of their shares in a corporation which operated a National Football
   League franchise, the judge's decision, after considering the market
   value of the shares, a projected earnings value, and the per share net
   asset value of the stock, and then determining the fair value of the shares
   by valuing the net assets of the corporation as a going concern and
   dividing the result by the total number of shares outstanding was war-
   ranted by the evidence and involved no error of law. [547-551]
In an action under G. L. c. 156B, §§ 86-98, by stockholders seeking appraisal
   of their shares in a corporation which operated a National Football
   League franchise, the judge did not abuse his discretion in awarding the
   plaintiffs compound interest. [551]
In an action under G. L. c. 156B, §§ 86-98, by stockholders seeking ap-
   praisal of their shares in a corporation operating a National Football
   League franchise, rather than accepting the corporation's per share of-
   fered price, the judge erred in denying appraisal to those stockholders
   whose shares were held in "street names," rather than in the names of
   the beneficial owners who had given notice of objection to the corporate
   action, and to those stockholders who had notified the corporation by
   means which the judge did not think met the "written objection" require-
   ment, but who had, nonetheless, mailed written objections to the corpo-
   ration; the appraisal remedy was properly denied those stockholders who
   had either abandoned the remedy in favor of accepting the offered price,
   or had failed to meet the requirements of § 86, through untimely trans-
   mittal of their objections. [551-554]

---

[1] Camille F. Sarrouf brings this action on behalf of himself and all other
stockholders of the New England Patriots Football Club, Inc., who have
demanded payment for their shares and with whom the corporation has not
reached agreement. See G. L. c. 156B, § 91, inserted by St. 1964, c. 723,
§ 1.

CIVIL ACTION commenced in the Superior Court on March 25, 1977.

The case was heard by *William G. Young, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Edward B. Hanify (George T. Finnegan & John D. Donovan, Jr.,* with him) for the defendant.

*Camille F. Sarrouf & Anthony Tarricone* for the plaintiffs.

LIACOS, J. The defendant, New England Patriots Football Club, Inc. (Old Patriots), was merged with the New Patriots Football Club, Inc. (New Patriots), in a transaction culminating on January 31, 1977. The plaintiffs in this case sought the statutory remedy of appraisal, G. L. c. 156B, §§ 86-98,[2] rather than accept the offering price of $15 a share. The merger also spawned litigation by dissenting stockholders seeking to overturn the merger. *Coggins* v. *New England Patriots Football Club, Inc., ante* 525 (1986). The factual circumstances and background of the merger are set forth in *Coggins, supra,* and need not be repeated here.

The Legislature has provided a means by which stockholders who disagree with certain proposed actions of a corporation may recover the value of their shares and dissociate from the corporation. G. L. c. 156B, § 86. A stockholder who (1) files a written objection with the corporation before a vote is taken on the action, (2) does not vote in favor of the action, and (3) demands in writing payment for his stock within twenty days of the mailing of the notice that the action has become effective, G. L. c. 156B, § 89, has the right to receive from the corporation payment of the fair value of his stock within thirty days after expiration of the statutory demand period. If, at the end of that thirty-day period, he has been unable to reach an agreement with the corporation on the fair value of the stock, he may, within four months, file a bill in equity seeking to have

---

[2] At all times pertinent to this action, the statutory provisions applicable, cited here and throughout this opinion, were those inserted by St. 1964, c. 723, § 1, and as amended by St. 1965, c. 685, §§ 40-43, and St. 1973, c. 749, §§ 1-4. The statutes have since been further altered by St. 1982, c. 149, and St. 1983, c. 522, §§ 22-24.

the court determine the fair value of the stock and order payment by the corporation. G. L. c. 156B, §§ 90, 92. See *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 721-722 n.2 (1979).[3]

The issues in this case are three claims of error in the decision of the trial judge. Those claims are demonstrated by the following questions: (1) Was the method employed by the judge to determine the value of the plaintiffs' stock permissible under the statute? (2) Did the judge err in awarding the plaintiffs 9% interest compounded annually? (3) Did the judge correctly deny appraisal to certain stockholders who allegedly did not meet the statutory requirements?

A. *The decision of the trial judge.* The judge stated that the current Massachusetts approach to valuation of stock is not determined solely by the market value, but "that it is for the fact-finder in the particular case to determine the weight of the relevant factors, among which, in instances where the corporation involved is solvent or has significant earnings prospects, the earnings and worth of the corporation as a going concern are important. *Martignette* v. *Sagamore Mfg.*, 340 Mass. 136, 142-143 (1959) (Whittemore, J.). *Piemonte* v. *New Boston Garden Corp.*, 377 Mass. 719, 724 (1979)."

In the circumstances of this case, the judge found that earnings are of little or no consequence, while worth as a going concern is paramount. As a going concern, the value of an enterprise such as the Old Patriots is the price a knowledgeable buyer would pay for the entire corporation, including the National Football League (NFL) franchise, the stadium lease,

---

[3] General Laws c. 156B, § 92, provides: "After hearing the court shall enter a decree determining the fair value of the stock of those stockholders who have become entitled to the valuation of and payment for their shares, and shall order the corporation to make payment of such value, together with interest, if any, as hereinafter provided, to the stockholders entitled thereto upon the transfer by them to the corporation of the certificates representing such stock. For this purpose, the value of the shares shall be determined as of the day preceding the date of the vote approving the proposed corporate action and shall be exclusive of any element of value arising from the expectation or accomplishment of the proposed corporate action."

various contracts, goodwill, and other assets and liabilities. He concluded that earnings or prospective earnings play little part in the valuation because "there exists a class of extremely wealthy individuals willing to purchase National Football League franchises at prices not directly related to the earnings or prospective earnings of the football team [in order to become] a member of an exclusive club — NFL Franchise-owners."

There were two classes of stock issued by the Old Patriots. One class was made up of voting shares, of which 100,000 had been issued; all 100,000 were held by William H. Sullivan, Jr. (Sullivan), see *Coggins, supra* at 527 n.3. The other class was made up of 139,800 nonvoting shares. It is the value of some of those nonvoting shares that is the subject of this case.[4] The judge noted that, except for the right to vote, voting and nonvoting stockholders of the Old Patriots had identical rights. Therefore, the judge stated that "it is appropriate to determine the 'fair value' of the plaintiffs' stock by valuing the net assets of the Old Patriots as a going concern and dividing the results by the total number of shares of stock outstanding — both voting and nonvoting — to determine the 'fair value' of each individual share of stock involved."

The judge did not base his choice of a method of valuation on the actual result of the merger,[5] but cited that result as evidence that a purchase by another of the extremely wealthy

---

[4] As explained in *Coggins, supra,* the *Coggins* class sought rescission, not judicial appraisal of the value of the stock on the day prior to the merger.

[5] In his explanation of the justification for pro rata net asset evaluation, the judge interspersed findings bearing on the fairness of the offering price and the result of the merger. The structure of the opinion somewhat clouds its reasoning. The merger was implemented solely to benefit Sullivan, who, by that means, was able to enhance his status as a member of the "club [of] NFL Franchise-owners." See *Coggins, supra* at 535. The offering price of $15 a share for nonvoting stock was, as we affirm today, considerably less than its value, and the contrast with the (adjusted value of) $102 Sullivan paid for each voting share emphasizes the undervaluation. However, the purpose and the result of the corporate action do not, as the defendant reminds us, bear on the value of the shares. The trial judge should have separated his conclusions concerning the conduct of the controlling stockholder from the rationale justifying his method of valuation. Nevertheless, imprecise writing is not reversible error.

potential members of the "exclusive club [of] NFL Franchise-owners" was not an unlikely occurrence, and was in fact the best means to measure the true value of the corporation. On all the evidence, the judge found the value of the Old Patriots on December 7, 1976, to be between $19,000,000 and $22,000,000. Adopting the more conservative value, and dividing by the 239,800 shares outstanding (100,000 voting shares and 139,800 nonvoting shares), the judge found the value of each share to be $80.[6]

The judge also awarded interest from the date of the vote approving the proposed merger "at a rate which fairly compensates the plaintiffs for their inability to use the funds represented by the appraisal award in prudent investments since the date of the merger." See G. L. c. 156B, § 95. *Piemonte, supra* at 735. He determined that rate to be 9% and allowed the plaintiffs' motion for clarification seeking to have the interest compounded annually.

The judge excluded certain plaintiffs from receiving the appraised value of their shares on four grounds: (1) they were not registered stockholders; or (2) they did not file proper written objection to the merger; or (3) their written objections filed with the corporation were filed late or were not "written objections" within the meaning of the statute; or (4) they did not file a demand for payment.

The defendant appealed the decision of the trial judge, claiming that the method of valuation he chose was not permitted by the statute because it gave effect to the results of the corporate merger to which the plaintiffs objected. It claims, as well, that the judge erred by placing exclusive reliance on net asset value in fixing the fair value of the stock, a measure the defendant claims is incompatible with the continuance of an enterprise as a going concern. The defendant also argues that the evidence did not support the judge's conclusions as to the worth of the Old Patriots. Last, it claims that the award of compound interest was contrary to Massachusetts law and practice.

---

[6] $19,000,000 ÷ 239,800 = $79.23.

The plaintiffs urge us to uphold the trial judge's decision, except for his denial of recovery to certain plaintiffs.[7] The plaintiffs claim that we should overturn that denial because the proper requirement to qualify for the appraisal remedy should be a good faith effort to comply with the statutory procedure and the receipt by the corporation of sufficient notice of possible dissenters.

B. *The method of evaluating shares*. The statute specifies that the "value of the shares shall be determined as of the day preceding the date of the vote approving the proposed corporate action and shall be exclusive of any element of value arising from the expectation or accomplishment of the proposed corporate action." G. L. c. 156B, § 92. The defendant interprets the decision of the trial judge as giving effect to the ultimate result of the merger, that is, sole ownership of the Patriots by Sullivan. In its view, the judge analytically liquidated the assets of the corporation and distributed the proceeds pro rata. This approach, it argues, is specifically forbidden by the statute.

*Piemonte, supra*, is instructive, and, to a great extent, controls the outcome here. The corporation undergoing a merger owned franchises for two professional hockey teams: the Boston Bruins of the National Hockey League and the Boston Braves of the American Hockey League. In addition, the corporation owned the Boston Garden. We reviewed the stock valuation, and we approved, but did not require, *id.* at 723-724, the "Delaware block" method of valuation[8] used by the judge in

---

[7] The plaintiffs have cross appealed from this ruling.

[8] The "Delaware block" method is a procedure intended to assure consideration of relevant value factors. See Note, Valuation of Dissenters' Stock Under Appraisal Statutes, 79 Harv. L. Rev. 1453, 1456-1471 (1966). The method calls for the decision maker to determine the value of the stock by first fixing the value of three factors: market value, earnings value, and net asset value. The decision maker assigns weights to each value, based on the relative importance of that aspect of the value of the stock in the particular circumstances. We have never required appraisal to be conducted under the Delaware block approach. See *Leader* v. *Hycor, Inc.*, 395 Mass. 215, 224 (1985). Nevertheless, we have found it a useful method "which a Massachusetts judge might appropriately follow." *Piemonte, supra* at 723-724. Delaware itself recently has moved away from the Delaware block method, permitting valuation by "generally accepted techniques." *Rosenblatt* v.

that case. The *Piemonte* judge determined the market value, a projected earnings value, and the per share net asset value of the stock. He then weighted the three valuations and, from the weighted value, determined the over-all value to be awarded under the statute.

The trial judge here considered each factor (market, earnings, and net assets) in reaching the value of the Old Patriots stock. Because of the unusual nature of a corporation whose business is the ownership and operation of an NFL team, the judge found that the appropriate measure of value was net asset value. He then considered the evidence indicating a net asset value as high as $28,776,000 and determined that the net asset value of the Old Patriots was between $19,000,000 and $22,000,000. He then chose the more conservative figure of $19,000,000 as the basis of his valuation.[9] We hold that the judge did not err.

The market value of stock is a reliable indicator of the actual value only when it reflects all valuable aspects of the corporate property. One indicator that the market is reliable is that a stock is widely held for investment by well-informed persons.

---

*Getty Oil Co.,* 493 A.2d 929, 940 (Del. 1985). *Weinberger* v. *UOP, Inc.,* 457 A.2d 701, 712-713 (Del. 1983).

[9] The judge's method could be described as a Delaware block analysis in which earnings and market values are considered negligible and so are given no weight. To confirm his analysis, the judge independently utilized a more usual Delaware block approach. He assigned weights of 5% to market value, which he found to be $15 a share (the defendant's own offer on the merger), and earnings value, which, using a multiplier of ten, see *Piemonte* at 726-729, he found to be $23.90 a share. From the median of a range of values he had found to be reasonable, the judge derived a net asset value of $85.51. According to the judge, the Delaware block approach yielded the following result:

| Type of value | Value | Weight | Result |
|---|---|---|---|
| Market | $15.00 | 5% | $ .75 |
| Earnings | 23.90 | 5% | 1.19 |
| Net asset (as a going concern) | 85.51 | 90% | 76.80 |
| Total value per share | | | $78.74 |

The resulting value of $78.74 is very close to the value of $80 a share determined by the judge's use of the more conservative view of net asset value.

*Martignette* v. *Sagamore Mfg. Co.,* 340 Mass. 136, 141-142 (1959). Where a stock is not regularly traded on a recognized exchange and there is no established market, the judge cannot use market value as a reliable indicator without reconstructing a hypothetical market value. Reconstruction of a more accurate hypothetical market value may be no more than a duplication of the judge's work in evaluating other factors, and he is not obliged to attempt a market value reconstruction. *Piemonte, supra* at 725. "[E]ven where stock [has] an established market, market price [is] not determinative and . . . 'it is for the appraisers in the particular case to determine the weight of the relevant factors.' *Martignette* v. *Sagamore Mfg. Co., supra* at 142." *Piemonte, supra* at 724. The trial judge did not abuse his discretion in declining to consider market value as a reliable indicator of value.

The judge found that the Old Patriots had a proven earnings capacity. He did not base his valuation on the earnings value of the stock, however, because he found it to be of little consequence in the over-all valuation of this type of corporation. The true value of ownership of a corporation like the Old Patriots is difficult to measure by the usual indicia of stock value such as earnings. It is not only a business venture, but, as the judge pointed out, a sportsman's endeavor. A team owner is a celebrity, a member of an exclusive club. By the use of his capital, the armchair athlete may become a participant in the public spectacle of professional sports. Most teams are owned outright by extremely wealthy individuals. The value they place on ownership of an NFL team is discernible in the prices they are willing to pay, which are largely independent of earning potential. Thus, the judge used prices paid for new franchises as a starting point in his valuation of the net assets of the Old Patriots.

No single stockholder acting alone (with the notable possible exception of Sullivan) could obtain the true value of his stock. The unreliable market for shares in the corporation did not reflect those values easily comprehended in the hypothetical sale of the entire assets. When the partial ownership of a stockholder is taken against his will, he should not have to

abandon his stake in this sportsman's endeavor simply because the stock market cannot reflect accurately the value of the stock, particularly when an alternative — pro rata valuation of the entire team — is easily available. There is no error ·in the judge's method of valuation.

The defendant argues that the judge's conclusion that the net asset value of the Patriots was $19,000,000 was not supported by substantial evidence. This argument is founded on the claim that the testimony of the plaintiffs' expert should not be considered probative. We note that the defendant does not now challenge the expert's credentials, and hence we need not review the expert's qualifications. As to his testimony, the judge rejected the expert's valuation as excessive and based his valuation on all the evidence. The judge was entitled to reach his own conclusion as to value, based on all the evidence before him. *Piemonte, supra* at 731.

Included in that evidence was the following information. In 1974, two new NFL franchises were sold in Tampa, Florida, and Seattle, Washington. The price for the franchises in these new markets was $16,000,000, though the agreement for payment brought the real cost down to a present value in 1974 of $12,500,000 for each franchise. Several factors made the 1976 Old Patriots franchise even more valuable. The Patriots enjoyed a monopoly over the entire New England area. Between 1973 and 1975, their operating revenue rose 17%, and their operating income rose 25%. On balance, the stadium lease was a valuable additional asset. Television broadcasts of NFL games consistently had been profitable for the networks, and it was reasonable to believe that the new television contract would enhance team revenues. Among other factors considered by the judge were the concessions contracts, tax and other local financial incentives, competition from other professional and collegiate sports, interest and fan support in the community, value of player contracts and the caliber of the players, and the current record and prospects of the team.

Valuation is a question of fact, and we will not disturb a judge's determination unless it is clearly erroneous. *Leader* v. *Hycor, Inc.,* 395 Mass. 215, 223 (1985). Cf. *First Pa. Mortgage*

*Trust* v. *Dorchester Sav. Bank,* 395 Mass. 614, 621, 624 (1985). The judge's findings as to value are warranted by the evidence and involve no error of law.

C. *The award of compound interest.* The defendant contends that the policy of the Commonwealth is that only simple interest be allowed on an appraisal award. The statute neither requires nor prohibits compound interest. G. L. c. 156B, §§ 92 and 95. Indeed, it leaves for the judge's determination even the amount of interest to be awarded. § 95. The judge is permitted to consider the inability of the plaintiffs to use the money tied up in the appraisal property. *Piemonte, supra* at 735. Appraisal is an equitable proceeding, and the judge may award compound interest. See *Shulkin* v. *Shulkin,* 301 Mass. 184, 195 (1938). A judge should be guided by *Piemonte, supra* at 735, where we indicated that a judge could consider fairly whether "[t]he amount selected fairly compensated the plaintiffs for their inability to use the money during the period in question, . . . [and whether the rate] reflected 'the rate of interest at which a prudent investor could have invested money.' *Universal City Studios, Inc.* v. *Francis I. duPont & Co.,* 334 A.2d 216, 222 (Del. 1975). See generally Grant, Appraisal Rights: Allowance for Prejudgment Interest, 17 B.C. Indus. & Com. L. Rev. 1 (1975)." The award of compound interest was not an abuse of the judge's discretion.

D. *The exclusion of certain plaintiffs.* A stockholder is entitled to appraisal only if "(1) he files with the corporation before the taking of the vote of the shareholders on such corporate action, written objection to the proposed action . . . and (2) his shares are not voted in favor of the proposed action." G. L. c. 156B, § 86. The stockholder must also, within the specified time period, "demand in writing from the corporation . . . payment for his stock." G. L. c. 156B, § 89. The judge denied appraisal to certain plaintiffs for various failures to comply with statutory requirements. Some were not registered as stockholders; some filed their written objections late; and others filed objections aberrant in form.

The statute does not define who is the "stockholder" for purposes of perfecting a right to appraisal. Those plaintiffs

denied appraisal because they were not registered stockholders were beneficial owners of stock held in what is known as a "street name," the name of a broker, or other nominee. The name of the broker would appear in the defendant's list of stockholders. The judge held that notice of objection to the corporate action by the beneficial owners of the stock was insufficient to meet the requirements of the statute.

The judge's interpretation of the statutory requirement was unduly strict. The purpose of the requirement of written notification of objection is to give the corporation notice of possible dissenters. The notice does not bind the stockholders to vote against the action, nor are those who do not give notice bound to vote in its favor. The notice does not identify to a certainty who the dissenters will be, since all are free to change their minds prior to the vote. See *Raab* v. *Villager Indus., Inc.,* 355 A.2d 888, 891, 893 (Del.), cert. denied sub nom. *Mitchell* v. *Villager Indus., Inc.,* 429 U.S. 853 (1976). The statute is designed to provide an equitable, simple, and expeditious remedy to dissenting stockholders. It should not be construed strictly against them. Notice by a stockholder, whether of legal or beneficial title, is sufficient to meet the statutory prerequisite. "The corporation can properly ask for further proof of beneficial ownership, but once it is on notice of the unrecorded beneficial owner's interest, it can no longer ignore that shareholder's right and insist that the notice of dissent be received from the stockbroker in whose name the shares are registered." *Matter of Bowman,* 98 Misc. 2d 1028, 1034 (N.Y. Sup. Ct. 1978).

The practical difficulties created by the defendant for the beneficial owner (and his agent) weigh against requiring notice from the record owner. The corporation mailed the proxy materials on November 7. The vote was on December 8. Thus, the broker would have only thirty days to duplicate and distribute copies of the materials, to receive word from the beneficial owners, and to notify the corporation. The extra burden imposed by the procedure is not justified by any more important advantage. The decision denying appraisal to those stockholders whose shares were held in a "street name" on the corporation's list must be reversed. Those stockholders are: Arthur L.

Griffin; Tucker, Anthony & R.L. Day, Inc.; Martin Meyerson; and Leo and Marlene Saidnawey.

Three stockholders were denied appraisal because their notice of objection did not arrive before the vote, though the stockholders claim that it was sent on time. General Laws c. 156B, § 86, requires the stockholders' written objection "before the taking of the vote." The judge found as a matter of fact that Thomas W. Incantalupo, Joseph Keller (by his agent), and Vincent A. Murray failed to file their notices with the corporation "before the taking of the vote." We conclude that these findings were warranted by the evidence and that they are not clearly erroneous. Hence, the judgments for the defendant as to these three plaintffs are affirmed.

Another stockholder whose objection was received late chose to turn in his shares for the offered price of $15 a share. By accepting the merger price, Stephen A. Ciccarelli ended his participation in the appraisal proceeding. The judge correctly ruled that Ciccarelli was no longer entitled to appraisal.

Two stockholders filed notices which the judge found to be insufficient as "written objections." We disagree and reverse. Joseph J. and Mary M. Rahal clearly indicated their intention to seek their appraisal remedy in a handwritten note on the proxy card returned to the corporation. John A. Granara engaged in extensive correspondence with Sullivan and others connected with the Old Patriots. His letters leave no doubt that he objected vigorously to the corporate action.

The judge noted an additional ground for denying Granara an appraisal: He did not file a demand for payment. See G. L. c. 156B, § 89. The statute requires the stockholder to demand payment "within twenty days after the date of mailing of a notice under . . . section eighty-eight." The corporation is required to "notify each stockholder who filed a written objection . . . that the action . . . has become effective. The notice shall be sent by registered or certified mail." G. L. c. 156B, § 88. The corporation did not send Granara a notice as required by § 88. Granara cannot be denied relief because he failed to respond to a notice that was never mailed to him.

The record is unclear as to why Ralph Incantalupo was denied an appraisal. We remand his case for a determination consistent with the principles we have applied to the other stockholders.

*Summary.* The judge's method of valuation was not in error. His valuation of the Old Patriots stock at $80 a share was warranted by the evidence. We affirm.

The award of 9% interest compounded annually was within the authority of the judge in this equitable proceeding. We affirm.

The denial of appraisal to several stockholders was based on an unduly strict interpretation of the statutory requirements. Those stockholders denied appraisal because their stocks were held in "street names," rather than in the names of the beneficial owners who gave notice, were wrongly denied. We reverse.

Two stockholders notified the corporation by means which the judge did not think met the "written objection" requirement. Both mailed their objections in writing to the corporation. The judge was wrong. We reverse.

One stockholder who abandoned his appraisal remedy in favor of accepting the offered price was excluded correctly from seeking any remedy. We affirm.

Three stockholders sent their written objections, but the objections were late. These stockholders did not meet the requirements of G. L. c. 156B, § 86. We affirm the judge's ruling.

The reason for denial of appraisal rights to one shareholder was not discernible from the record. We remand for a determination of his case consistent with this opinion.

*So ordered.*