Helen H. PAVLIDIS, et al., Plaintiffs,

v.

**NEW ENGLAND PATRIOTS FOOTBALL CLUB, INC.,**
Defendants.

Civ. A. No. 76–4240–S.

United States District Court,
D. Massachusetts.

Nov. 19, 1986.

---

Camille F. Sarrouf, Anthony Tarricone, Boston, Mass., Nathaniel S. Weinter, Norwood, Mass., for plaintiffs.

Richard E. Bachman, George T. Finnegan, John D. Donovan, Jr., Ropes & Gray, Boston, Mass., for defendants.

## FINDINGS, RULINGS AND ORDER FOR JUDGMENT

SKINNER, District Judge.

This is a class action by holders of nonvoting stock of the former New England Patriots Football Club, Inc. ("the Patriots") seeking an accounting and damages with respect to the 1976 merger of the Patriots with a new corporation formed for that purpose ("New Patriots"). On July 22, 1983, after trial, I issued an Order ("1983 Order") for entry of judgment in favor of defendants on all nine counts of the complaint. The Court of Appeals affirmed in part, vacated in part, and remanded. *Pavlidis v. New England Patriots Football Club, Inc.*, 737 F.2d 1227 (1st Cir.1984).

In particular, the remand requested that I consider whether the following omissions from the Patriots proxy 1976 statement were material:

(1) The original issuance price of the Patriots' voting stock. *Id.*, at 1235.

(2) An increase in local broadcasting revenue. *Id.*, at 1235–36.

(3) Compensating balances maintained by the Patriots in support of the personal loans of William Sullivan. *Id.*, at 1236–38.

The Court of Appeals also requested that I make specific findings of fact and law in regard to the plaintiff's other claims. *Id.*, at 1238.

At the request of all of the parties, further proceedings herein were stayed pending the decision of the Supreme Judicial Court of Massachusetts in two related state cases. On May 16, 1986, the Supreme Judicial Court ("SJC") issued decisions in two cases relating to the 1976 merger of the Patriots and the New Patriots. *Coggins v. New England Patriots Football Club, Inc.*, 397 Mass. 525, 492 N.E.2d 1112 (1986); *Sarrouf v. New England Patriots Football Club, Inc.*, 397 Mass. 542, 492 N.E.2d 1122 (1986). One of the decisive issues on remand is the effect of the decisions in those cases on the state law claims in this case.

A detailed history of the transaction in issue may be found in my 1983 order, and a summary in the cited opinion of the Court of Appeals.

### I. *Federal Claim*

*Count I. Securities Exchange Act, § 14(a)*

(a) *Original Issuance Price of Voting Stock*

■ My 1983 Order erroneously stated that the original issue price of the voting stock was $5.00. In fact, the original price was $2.50 per share. This difference in original issue price between the voting and nonvoting shares is not material and no party has suggested that it was. The proxy statement indicated the price that had been paid by the Sullivans in 1975 when they acquired control of the voting stock. Any shareholder who felt that voting and nonvoting shares should be of equal value already had enough information to enable him to vote against the merger. Moreover, "[t]he question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Industries, Inc. v. Northway Inc.*, 426 U.S. 438, 445, 96 S.Ct. 2126, 2130, 48 L.Ed.2d 757 (1976). While the original issue price of the voting stock may have been instructive as to the genesis of

the corporation, it was not material to a reasonable person thinking as an investor and trying to decide whether, in 1976, $15 per share was a fair price or whether the proposed merger was fair to the nonvoting owners.

### (b) *Income from Local Media*

■ In 1976, the Patriots renegotiated their local media broadcasting contract. As a result of the renegotiation, local revenue for 1976 increased by approximately $75,000 over 1975 revenue. This increase amounted to less than 1% of the Patriots 1975 operating revenue. While the failure to disclose this certain increase may be considered a further example of the "artfulness" of the proxy statement as a whole, 1983 Order at 13, the relatively trivial nature of the sum involved renders it immaterial. The disclosure of the added revenue would not have had a "significant *propensity* to affect the voting process." *Mills v. Electric Auto–Lite*, 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970) (emphasis in the original).

### (c) *Compensating Balances*

■ I found in my 1983 Order that the purpose of the merger was to allow William Sullivan to direct the New Patriots' income flow to himself so that he could repay the debts he incurred to buy control of the voting stock of the Patriots. One of the conditions imposed by the banks was that the Patriots maintain compensating balances in support of Sullivan's personal loans. "Clearly, this was an improper use of corporate funds for Sullivan's benefit." 1983 Order, at 10. I have not changed the conclusion I reached in my 1983 Order, however, that the failure to disclose the compensating balances was immaterial.

As the Court of Appeals noted, the purpose of the proxy statement was to permit shareholders to reach informed judgments regarding the adequacy of the $15.00 per share price proposed in the merger. *Pavlidis, supra*, at 1236. In that context, the mere fact of Sullivan's self-dealing was not material.

The reason that the Court of Appeals remanded the issue of the materiality of the compensating balances was so that I could make explicit findings regarding materiality "in light of the standard set forth in Accounting Series Release ("ASR") No. 148" *Id.*, at 1237. One of the Rules of General Application regarding regulation S–X states that "[i]f the amount which would otherwise be required to be shown with respect to any item is not material, it need not be separately set forth." 17 C.F.R. § 210.4–02.

ASR No. 148 merely states "Guidelines and Interpretations" "to facilitate understanding and application of the" regulations found at 17 C.F.R. § 210.5–02. 38 F.R. 32440, November 26, 1973. ASR No. 148 is not itself a regulation and does not in any way amend Regulation S–X. Furthermore, "disclosures such as those set forth herein are of primary interest to those users of financial statements who wish to undertake detailed analysis of corporate activities and may not be required in financial disclosure oriented solely to the needs of the average investor." 38 F.R. 32440, November 26, 1973.

ASR No. 148 states that "[i]n the usual case, reportable compensating balances which in the aggregate amount to more than 15 percent of liquid assets ... would be considered to be material." 38 F.R. 32441, November 26, 1973.

The facts in this case do not support a finding that the compensating balances were material to a shareholder's decision whether $15.00 was a fair price for his shares. As the Court of Appeals suggested, "the failure to disclose the existence of compensating balances is more likely to have *overstated* than to have understated Patriots' profitability. Since the point of appellants' argument is that the proxy statement induced them to sell by *understating* material sources of income, the concealment of the compensating balances might not have been material to them...." *Pavlidis, supra*, at 1238 (emphasis in original).

Furthermore, the Court of Appeals specifically stated that one of the issues I

should consider on remand is the extent to which the compensating balances were restricted or unrestricted. I find that the Patriots' compensating balances were substantially unrestricted. LaSalle Bank required that the Patriots keep their principal account there, but imposed no other requirements. Rhode Island Hospital Trust ("RIHT") required that the Patriots maintain an average balance equal to or greater than 15% of the outstanding loan balance, but imposed no other restrictions; the Patriots were free to draw their balance down to zero.

The actual compensating balances were never more than marginally above 15%. The other funds maintained at RIHT and LaSalle were simply part of the Patriots' liquid asset accounts. ASR No. 148 requires that compensating balances not be offset by the amount of cash reserves a firm would otherwise maintain. 38 F.R. 32441. However, funds kept by the Patriots in the same banks as part of normal cash reserves above any amounts required by those banks as support for the Sullivan's loan obligations should not be considered compensating balances.

The compensating balances kept by the Patriots were only marginally greater than 15%. They were substantially unrestricted, and hence did not impose a burden on management. ASR No. 148 does not impose any *per se* rule of materiality, and its specific focus is not the average investor. Given that the compensating balances at issue here served, if anything, to overstate the Patriots' income, I do not find the Patriots' failure to disclose the compensating balances to be material.

(d) *Conclusions Regarding the Proxy Statement*

■ In my 1983 Order, I found the proxy statement to be "no model of candor." 1983 Order, at 13. That conclusion remains, and is perhaps strengthened by further analysis of the issues posed by the Court of Appeals. My ultimate conclusion regarding the proxy statement still stands, however. "The reader who followed through the whole document was given

sufficient information to form his own judgment as to whether the Patriot[s were] an 'exceptionally risky and [unpredictable] business.'" *Id.* The failure to disclose the original issue price of the voting stock, the increased local media income in 1976, and the compensating balances supporting the Sullivan loans were immaterial to an informed decision regarding the value of the nonvoting stock, considered both individually and in the context of the entire proxy statement.

II. *Pendent Jurisdiction*

■ As a preliminary matter, defendants argue that I should refuse to take pendent jurisdiction of this state claim. It is far too late in the game to raise the issue of pendent jurisdiction, and I now explicitly take jurisdiction of plaintiffs' state claims. Pendent jurisdiction is discretionary. "Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, ..." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In this case, the issues of convenience and judicial economy are largely irrelevant. This case is post-trial; attorneys have already expended their energies prosecuting and defending plaintiffs' claims. Moreover, the fairness issue lies overwhelmingly in plaintiffs' favor.

■ The Supreme Judicial Court denied the motion of the Pavlidis plaintiffs to intervene in that action, stating that "[t]he Pavlidis class must stand or fall on the merit of its own pending Federal proceeding." *Coggins, supra*, 397 Mass. at 539, 492 N.E.2d 1112. Fairness dictates that a federal court exercise pendent jurisdiction over state law claims whenever it is aware that the state courts will not hear the claims, specifically because they have already been brought in federal court. Denial of pendent jurisdiction would leave plaintiffs without any forum in which they can argue whatever remaining merits their claims may have.

694

III. *Remaining Counts*

*Count II*

◼ Count II alleges a violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j) and Rule 10(b)–5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10(b)–5. Rule 10(b)–5 makes it unlawful to "make any untrue statement of a material fact ... in connection with the purchase or sale of any security." The standard of materiality is the same under § 10(b) as under § 14(a). *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 269 (3d Cir.), *cert. den.* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972); *Rubenstein v. IU International Corporation,* 506 F.Supp. 311, 314 (E.D. Penn.1980). Therefore, since I have already concluded that the proxy statement was not materially misleading under § 14(a), plaintiffs' § 10(b) claim must fail as well.

*Count III*

◼ Count III alleges that the defendants attempted to manipulate the market for the Patriots' stock in the time preceding the merger, in violation of §§ 9 and 10 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i, 78j. Section 9 of the 1934 Act focuses on market manipulation. However, § 9 only applies to securities listed on a national securities exchange. Since the Patriots' nonvoting stock was not listed on a national exchange, judgment must enter for the defendant on plaintiffs' § 9 claim.

◼ Plaintiffs pleaded the same claim of manipulation as violating § 10 of the 1934 Act and Rule 10(b)–5. However, plaintiffs failed to adduce any evidence that the defendants had in fact manipulated the price of the nonvoting stock during the year preceding the merger. Judgment is therefore entered for defendants on Count III of the complaint.

*Counts IV, V, and VI*

The plaintiffs have waived Counts IV through VI.

*Count VIII*

Count VIII of plaintiffs' complaint alleges a "violation of M.G.L. c. 260, § 12 and [defendants'] fiduciary duty." Supplemental and Amended Complaint, ¶ 133. Chapter 260, § 12 provides for the tolling of the applicable statute of limitations if a defendant has fraudulently concealed a cause of action from a plaintiff. It confers no substantive rights.

To the extent that plaintiffs are simply realleging the fiduciary duty violations, Count VIII is duplicative of Count VII. Judgment is therefore entered for defendants on Count VIII.

*Count IX—RICO, Mail Fraud, Securities Exchange Act*

◼ Count IX alleges violations of the Securities Exchange Act, §§ 9, 10, and 14, the mail fraud statute, 18 U.S.C. §§ 1341, 1343, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* In addition to relying on the allegation that the proxy statement was misleading, plaintiffs also claim that defendants made misleading statements to a Charles Mirak in order to induce him to sell his shares. I have already found that judgment must be entered for the defendants on the various Securities Exchange Act claims, because the proxy statement was not materially misleading. That finding disposes of the mail fraud claims as well. The introduction of Mr. Mirak cannot save these claims; Mr. Mirak did not testify at trial.

◼ Plaintiffs argue that the defendants' activities surrounding the merger violated RICO. This claim is also without merit. Successful RICO claims require proof of at least two, and probably more, racketeering acts. 18 U.S.C. § 1961(5). "Indeed, in common parlance two of anything do not generally form a 'pattern'." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Supreme Court quoted from the legislative history: "The target of [RICO] is thus not sporadic activity.... It is this factor of continuity plus relationship which combines to produce a

pattern." *Id.*, quoting S.Rep. No. 91–617, p. 158 (1969).

The merger was one transaction, and the circumstances surrounding the merger could not constitute a "pattern" of racketeering activity required by RICO. This is particularly true given my finding that the proxy statement was not materially misleading, but even if my findings regarding the proxy statement were otherwise, plaintiffs would still not have made out a RICO violation.

### Count VII

 Whatever the apparent merits of plaintiffs' claim that the defendants breached a fiduciary duty due them may have been at the time of my original order, the whole picture has been materially changed by the decision of the Supreme Judicial Court in *Coggins*. The Supreme Judicial Court held that where a corporate freeze-out is carried out for no legitimate corporate purpose and solely for the selfish interest of the directors and majority stockholders at the expense of the minority, there is an actionable breach of fiduciary duty. The court further affirmed the trial judge's finding that the merger did affect a freeze-out of the nonvoting shareholders solely for the benefit of the Sullivans. This judgment may well have preclusive effect, but the parties' arguments on that issue are really beside the point.

I have already found the facts substantially in accordance with those of the state trial judge (although I made no finding about the adequacy of the price and might not agree with him if I were to). If it was not sufficiently explicit in my 1983 order, I now expressly find on the existing record that the 1976 merger and freeze-out of the nonvoting shares served no legitimate corporate purpose and were for the sole purpose of bailing William H. Sullivan, Jr. out of overextended loans which he had incurred to buy control of the Patriots.

The issue of the fiduciary duty of majority stockholders to minority stockholders has been held by the Supreme Court to be one of state law. *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). The opinion in *Coggins*

accordingly states the governing law in this case. The Supreme Judicial Court held that shareholders who had voted against the merger were entitled to their "aliquot share of the present assets" of the New England Patriots in lieu of rescission, and remanded the case to the Superior Court for assessment of damages.

The law concerning liability is thus established by the *Coggins* decision and the relevant facts have been found. The interesting and difficult question remaining is, who of the present plaintiffs can take advantage of them, if any? The state trial judge permitted the plaintiff in this case and the plaintiffs in *Sarrouf, supra* to intervene, but the Supreme Judicial Court held this to be error, and reversed this ruling. It held that by suing to enforce their statutory appraisal rights the *Sarrouf* plaintiffs had elected their remedy and were precluded from participating in rescission, or monetary damage in lieu thereof. The present plaintiffs were described as having voted for the merger and basing their claims on inadequate disclosure. They were held to their election to purusue their remedies in this court.

 It is true that the plaintiffs in this court tried and argued the case primarily as a securities case and have lost on the issue of nondisclosure. I rule, however, that they have preserved their claim under state law as stated in the complaint in this case notwithstanding their failure to intervene in *Coggins*. I treat the ruling on intervention as procedural and not preclusive on the merits.

 That does not end the inquiry, however. *Coggins*, *Sarrouf* and the present case are all class actions. The class in this case is described as follows:

All persons who owned shares of New England Patriots Football Club, Inc., on or after November 5, 1976, except those former Patriots shareholders who are plaintiff in *Coggins v. New England Patriots Football Club, Inc.*, Civil Action No. 77–3082, in Middlesex Superior Court of Massachusetts.

This class included the *Sarrouf* plaintiffs, but under the rule in *Coggins*, the *Sarrouf*

plaintiffs may not recover for breach of fiduciary duty, having elected the statutory remedy of appraisal.

The *Coggins* class of plaintiffs is described as follows:

[S]tockholders of New England Patriots Football Club, Inc. who have voted against the merger ... but who have neither turned in their shares nor perfected their appraisal rights ... [and who] desire only to void the merger.

It would appear that virtually all the shareholders entitled to the benefits of the *Coggins* decision are already members of the *Coggins* class and thus not a part of the class in this case. The *Sarrouf* plaintiffs are part of this case, but they are out by reason of their election of appraisal rights. Those who voted for the merger may be barred by acquiescence absent extraordinary circumstances. What are the consequences of abstention from voting? Who is left to carry away the prize?

The record is not clear enough to answer the latter question with confidence. Accordingly, the clerk shall forthwith assign a date and time for a conference of counsel to schedule a hearing on this question, and also to consider what may be done to coordinate any further proceedings in this case with the assessment of damages after remand in the Superior Court.