Helen **PAVLIDIS**, et al., Plaintiffs,

v.

**NEW ENGLAND PATRIOTS FOOTBALL CLUB, INC.,** et al., Defendants.

Civ. A. No. 76–4240–S.

United States District Court, D. Massachusetts.

May 18, 1987.

Order Denying Reconsideration June 8, 1987.

Camille F. Sarrouf, Anthony Tarricone, Boston, Mass., Nathaniel S. Weinter, Norwood, Mass., for plaintiffs.

Richard E. Bachman, George T. Finnegan, John D. Donovan, Jr., Ropes & Gray, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR A RULING ON THE APPLICABLE MEASURE OF DAMAGES

SKINNER, District Judge.

Plaintiffs in this seemingly never-ending case have now moved for an order setting damages at the level awarded in the state court appraisal action arising out of this merger. *Sarrouf v. New England Patriots Football Club, Inc.*, 397 Mass. 542, 492 N.E.2d 1122 (1986). *Sarrouf* determined the value of Old Patriots non-voting stock to have been $80 per share at the time of the merger, and ordered that interest be paid at the rate of 9%, compounded annually. Defendants oppose the motion, arguing that *Coggins v. New England Patriots Football Club, Inc.*, 397 Mass. 525, 536, 492 N.E.2d 1112 (1986) stated that rescissory damages, and rescissory damages only, are appropriate in this case. I conclude, to my surprise, that plaintiffs are correct.

It is clearly established in Massachusetts law that when a corporate director obtains property by virtue of a breach of the fiduciary duties attendant upon him as a director, he holds that property in a constructive trust for those from whom he obtained the property. *Barry v. Covich*, 332 Mass. 338, 342, 124 N.E.2d 921 (1955) ("A constructive trust may be said to be a device employed in equity, ... in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation...."). That is precisely what occurred in this case. Defendants obtained plaintiffs' stock through a breach of their fiduciary duty to plaintiffs.

When a corporate director holds such property on a trust, he is liable to the victims of his fiduciary breach for any profits made, *or* for the value of the property at the time of the breach, plus interest.

The rule is general and fundamental, that no person holding trust funds can be allowed to derive any personal gain or advantage, either directly or indirectly, from the use thereof, but he must manage them with a single eye to the advantage of the trust estate; and, if he assumes to use them in any manner for his own benefit or in his own business, he must account for all the profits arising from such use, if profits are made, or for the principal and interest, in case of loss.... The persons interested in the trust estate have the option of taking the profits, or of taking interest. This rule is applicable to every kind of fiduciary relation: to ... directors of corporations.

*Bowen v. Richardson,* 133 Mass. 293, 296 (1882).

Therefore, once a corporate director appropriates property through a fiduciary breach, he is in a no-win situation. If the property appreciates in value, he is liable for that profit; if it depreciates, he is liable for principal plus interest. A plaintiff's entitlement to principal plus interest does not depend on a defendant having wasted the assets while he controlled them. Whatever the reason for the depreciation in asset value during a defendant's control over those assets, he remains liable for principal plus interest if the victim of the breach chooses that remedy.

■ Unless the Supreme Judicial Court changed Massachusetts law on this issue in *Coggins,* plaintiffs here are entitled to receive the value of their shares at the time of the merger, plus interest. It is therefore necessary to analyze the decision in *Coggins* as it pertains to the proper measure of damages. The plaintiffs in *Coggins* sought rescission of the merger, i.e., true restoration of the parties to the positions they occupied in 1976. The trial court denied rescission because various parties had relied on the validity of the merger. The Supreme Judicial Court agreed that "the interests of the corporation and of the plaintiffs will be furthered best by limiting the plaintiffs' remedy to an assessment of damages." *Coggins, supra,* 397 Mass. at 536, 492 N.E.2d 1112. At this point, the Supreme Judicial Court discussed the appropriate measure of damages.

We do not think it appropriate, however, to award damages based on a 1976 appraisal value. To do so would make this suit a nullity, leaving the plaintiffs with no effective remedy except appraisal, a position we have already rejected. Rescissory damages must be determined based on the present value of the Patriots, that is, what the stockholders would have if the merger were rescinded.

*Id.*

Given the clarity of the holdings in the cases cited and discussed, *supra,* I do not regard the language in *Coggins* discussing the proper measure of damages as limiting plaintiffs to rescissory damages, but rather stating plaintiffs' entitlement to rescissory damages. Adopting defendants' interpretation requires a belief that the Supreme Judicial Court overruled, *sub silentio,* the entire line of cases holding that prevailing plaintiffs are entitled to either profit or principal plus interest. "The principles quoted above [from *Bowen v. Richardson, supra* ] have been reaffirmed or restated and applied in many of our decisions too numerous to cite." *O'Brien v. Dwight,* 363 Mass. 256, 294 N.E.2d 363, 379 (1973). It is not likely that the Supreme Judicial Court would overturn such a well-established principle without any mention of the principle itself, or the cases affirming it.

In this connection, it is important to consider what was before the Supreme Judicial Court. Examination of the briefs shows that the *Coggins* plaintiffs were seeking only rescissory relief and the defendants did not address the issue of damages. It is true that the present plaintiffs, as intervenors, sought the 1976 value plus interest, but the Supreme Judicial Court denied their standing and presumably never reached their argument on damages.

As a matter of judicial interpretation, it must always be preferable to adopt an interpretation of an opinion that maintains established precedents, where the Supreme Judicial Court itself has not overruled those precedents. The interpretation I adopt does this. It results in a plausible

reading of *Coggins*, and maintains the dignity of a long line of precedents which the court in *Coggins* not only did not explicitly overrule, but which it did not discuss at all. I hold that as a matter of law, plaintiffs are entitled to claim as damages the fair value of their shares in 1976, plus reasonable interest.

Plaintiffs next claim that this value has already been established in the *Sarrouf* appraisal proceeding, and that those findings are binding on this court. They invoke the doctrine of offensive collateral estoppel. Massachusetts courts apply collateral estoppel in order to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Aetna Casualty & Surety Co. v. Niziolek*, 395 Mass. 737, 742, 481 N.E.2d 1356 (1985) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)).

It is true that there is now no way to prevent multiple lawsuits regarding the 1976 merger, and that this case has not exactly demonstrated the conservation of judicial resources. Some of the blame for this lies with the plaintiffs. Nonetheless, I remain concerned regarding possible inconsistent adjudication. I have decided that certain plaintiffs are entitled to recover on the claim of fiduciary duty breach, and that they are also entitled to claim as damages the 1976 value of their shares, plus interest, rather than being limited to rescissory damages. The value of the shares in 1976 was determined in *Sarrouf*, as was the appropriate interest rate. It would both waste judicial resources and cause a risk of inconsistent adjudication to repeat *Sarrouf*. Unless it is otherwise improper, the defendants are collaterally estopped to deny the values established in *Sarrouf*.

Massachusetts applies offensive collateral estoppel subject to two fairness considerations. *Niziolek, supra*, 395 Mass. at 745, 481 N.E.2d 1356. First, the plaintiffs' conduct must be fair. A plaintiff should not be allowed to avoid the costs and risks of litigation and then reap the benefits of a favorable judgment. *Id.* The conduct of those plaintiffs who prevailed in this case, in refusing to seek appraisal, does not constitute such impermissible conduct. Plaintiffs did not sit on their rights in the way that concerned the *Niziolek* court and the court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Plaintiffs brought suit in this court in 1976, before the merger took place.[1] It is true that they have attempted to take best advantage of the state litigation; it is not true that they sat back and refrained from litigation until they knew they had a winner. The concern expressed in *Niziolek* and *Parklane Hosiery* is that offensive collateral estoppel will allow plaintiffs to refrain from litigation entirely until the risks have been eliminated. Allowing collateral estoppel here, where the plaintiffs brought their federal suit in 1976, eight years before the first judgment favorable to their position was handed down by a state court, will not encourage such behavior. The prevailing plaintiffs originally sought actual rescission of the merger. It was thus proper for them not to join *Sarrouf*. Since it has been determined that rescission is impossible, plaintiffs now claim damages of principal plus interest, which I have determined to be their right. Their failure to join *Sarrouf* when they still hoped to rescind the merger should not prevent them from now claiming the benefits of collateral estoppel as to valuation.

The second fairness issue is fairness to the defendant. *Niziolek, supra*, 395 Mass. at 745, 481 N.E.2d 1356. Collateral estoppel is improper if either the defendant did not have adequate incentive to litigate the prior case or "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery, supra*, 439 U.S. at 330, 99 S.Ct. at 651 (footnote omitted). Neither consideration is relevant here. Defendants fully litigated *Sarrouf*, pursuing their ap-

---

1. This timing incidentally casts some doubt on their original claim that they were deceived by the proxy statement, but that is now by the board.

peal to the Commonwealth's highest court. There were no suits prior to *Sarrouf* resulting in different valuations.

■ Defendants are collaterally estopped from challenging both the $80 per share valuation and the award of 9% compound interest. It is clear from an examination of *Sarrouf, supra*, 397 Mass. at 551, 492 N.E.2d 1122, that the interest award reflected a factual finding concerning the value of the use of the money during the relevant time period. Defendants litigated this issue to the SJC as well.

As noted in my Memorandum and Order of April 10, 1987, certain of the prevailing plaintiffs turned in their stock for the merger consideration of $15 per share. Those plaintiffs have had the use of that money in the intervening period. Therefore, the proper measure of damages for those plaintiffs is $65 per share plus 9% interest, compounded annually.

*Summary*

Massachusetts law permits the prevailing plaintiffs in this case to elect principal plus interest, rather than current value, as the proper measure of damages. The findings in *Sarrouf* as to the value of the shares in 1976 and the proper rate of interest are binding on this court under principles of collateral estoppel.

Plaintiffs' motion for a ruling that the measure of damages shall be $80 per share plus 9% interest, compounded annually from December 7, 1976, is ALLOWED for those shareholders who did not turn in their shares. The measure of damages for those shareholders who did turn in their shares shall be $65 per share plus 9% interest, compounded annually from December 7, 1976.

Counsel for all parties shall attend a conference with me at 3:00 p.m. on Wednesday, June 3, 1987, to settle on a method for identifying former stockholders entitled to payment and for making payment to them, and for settlement of a form of judgment.

## MEMORANDUM AND ORDER ON MOTION OF INDIVIDUAL DEFENDANTS FOR RECONSIDERATION OF ORDER OF MAY 18, 1987

■ I have previously ruled that all defendants[1] were liable to certain plaintiffs for breach of corporate fiduciary duty. On May 18, 1987, I ruled that I was bound as to the proper measure of damages by the factual findings in *Sarrouf v. New England Patriots Football Club, Inc.*, 397 Mass. 542, 492 N.E.2d 1122 (1986). Defendant William H. Sullivan, Jr., now seeks reconsideration of that order. He argues that he cannot be collaterally estopped from arguing as to the proper measure of damages, because he was not a party to *Sarrouf.*

"A nonparty to a prior adjudication can be bound by it 'only where [the nonparty's] interest was represented by a party to the prior litigation.'" *Massachusetts Property Ins. v. Norrington*, 395 Mass. 751, 481 N.E.2d 1364 (1985) (citation omitted). The defendant in *Sarrouf* was the corporation existing *after* the merger at issue in this case. William H. Sullivan was director and president of this corporation, as well as 100% stockholder. Moreover, he testified in *Sarrouf.* There is a complete identity of interest between William H. Sullivan and the New England Patriots Football Club, Inc., and Sullivan's interests were therefore represented in *Sarrouf.*

Sullivan relies on *McAlevey v. Litch*, 234 Mass. 440, 125 N.E. 606 (1920). In *McAlevey*, plaintiff brought a personal injury suit against the driver of the truck that hit him. Plaintiff had previously lost a suit arising out of the same accident which he had brought against the corporation of which defendant was president, treasurer, manager, and director. Defendant sought application of res judicata. The Supreme Judicial Court stated that for res judicata to apply, "it must appear, among other requirements, that the two proceedings are between the same parties or their privies, and that they are for the same cause of action." The Supreme Judicial Court did

---

1. Defendant Mary Sullivan has since been dismissed from the case.

not find the individual defendant to be in privity with the corporation.

*McAlevey* is not dispositive. In the first place, given recent jurisprudential developments in this area, the precedential value of res judicata cases from the 1920's is very weak. The much simpler and broader statement in *Norrington, supra,* suggests that *McAlevey* may no longer be good law. In addition, *McAlevey* does not conclusively state that the individual defendant owned 100% of the stock in the corporation. Moreover, *McAlevey* concerned claim preclusion, rather than issue preclusion. Finally, claim preclusion in *McAlevey* was improper for the independent reason that the causes of actions were not identical. In sum, *McAlevey* is probably no longer good law, and even if it were, is distinguishable on its facts.

The motion for reconsideration of my May 18, 1987, Order is DENIED.